STATE OF NORTH CAROLINA v. LASH LARUE HAMMONDS

No. 7918SC787

(Filed 4 March 1980)

**1. Jury § 6.3— juror's ownership of weapons—examination properly limited**

In a prosecution of defendant for assault with a deadly weapon and discharging a firearm into occupied property, the trial court's refusal to allow defendant to examine prospective jurors as to whether they owned firearms or weapons did not prejudice defendant or hinder his ability to make peremptory challenges.

**2. Criminal Law § 73.3— hearsay testimony—admissibility to show state of mind—intent**

In a prosecution of defendant for assault with a deadly weapon and discharging a firearm into occupied property, testimony by the victims that a neighbor knocked on their door and told them that defendant "is out here and wants a piece of [the victims'] ass" was not excludable as hearsay, since the statement of the neighbor was admissible to show the state of mind which caused the victims to take action and was not offered to prove the truth of the matter asserted, and since defendant's statement was admissible to show his intent.

**3. Criminal Law § 89.10— pending charge against witness—cross-examination for impeachment improper**

The trial court did not err in refusing to allow defendant to ask an assault victim questions concerning an assault charge pending against him, since a witness may not be cross-examined for impeachment purposes as to whether he had been indicted or is under indictment for a criminal offense.

**4. Criminal Law § 102.3— improper jury argument—impropriety cured**

Where the trial court sustained defendant's objection to the prosecutor's improper remarks concerning the burden of producing the gun used in the assault with which defendant was charged, any prejudice which defendant may have suffered was removed.

**5. Weapons and Firearms § 3— shooting into occupied property—sufficiency of evidence**

Evidence was sufficient for the jury in a prosecution for shooting into occupied property where it tended to show that defendant commenced shooting; bullets hit the victims' house; and two females were inside the house.

APPEAL by defendant from *Davis, Judge.* Judgment entered 4 May 1979 in Superior Court, GUILFORD County. Heard in the Court of Appeals 28 January 1980.

The events which led to these criminal prosecutions took place around 9:00 p.m. on 12 November 1978. Evidence was presented at trial tending to show that defendant parked his car on the street in front of a house occupied by Billy Joe Fritts and his sons, Tommy Joe and Billy Ray. Defendant told a neighbor to knock on the front door of the house and deliver a message. Billy Joe Fritts answered the door, and the neighbor stated that defendant was outside and that ". . . he wants a piece of Tommy's and Billy's ass."

Billy Ray Fritts went out the front door, through the yard to the road, and confronted defendant. Billy Joe Fritts, the father, came outside and stood on the front porch. It is not clear from the

evidence what words passed between Billy Ray and defendant, but not long after Billy Ray approached defendant, Hammonds pulled out a gun and began firing in Billy Ray's direction. Billy Ray swung a knife at defendant and then retreated into the house.

There was testimony at trial that bullets were found in the outside wall of the house, in Billy Joe Fritts's truck, and in a car owned by a neighbor. Billy Joe Fritts testified that two shots went through a bedroom.

Defendant was arrested on 12 November 1978 and subsequently indicted. Hammonds was found guilty of assault with a deadly weapon and of discharging a firearm into occupied property and sentenced to an active prison term. From the conviction, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Nonnie F. Midgette, for the State.*

*Frederick G. Lind for defendant appellant.*

HILL, Judge.

[1] Defendant argues that the trial court erred by not allowing him to examine prospective jurors as to whether they owned firearms or weapons. "Regulation of the manner and the extent of the inquiry on voir dire rests largely in the trial judge's discretion. (Citations omitted.) A defendant seeking to establish on appeal that the exercise of such discretion constitutes reversible error must show harmful prejudice as well as clear abuse of discretion. (Citations omitted.)" *State v. Young,* 287 N.C. 377, 387, 214 S.E. 2d 763 (1975); *modified as to death penalty* 428 U.S. 903 (1976). We find that the trial judge's refusal did not prejudice defendant or hinder his ability to make peremptory challenges. There was no abuse of discretion by the trial judge. Consequently, defendant's first assignment of error is without merit.

[2] Defendant next assigns as error the trial court's action in overruling his objections to testimony given by Billy Ray, Billy Joe, and Tommy Joe Fritts. Defendant contends that testimony from the above witnesses to the effect that a neighbor came to their door and stated that, "Lash is out here and wants a piece of Tommy's and Billy's ass." was hearsay. Similar testimony regard-

ing the statement by the neighbor was given by each witness and properly objected to each time.

Testimony is defined as hearsay ". . . whenever the assertion of any person, other than that of the witness himself in his present testimony, is offered to prove the truth of the matter asserted . . . ." 1 Stansbury's N. C. Evidence § 138, pp. 459-60 (Brandis rev. 1973). (Citing many cases.) "When the witness reports on the stand that one declarant stated to him that another declarant made a given statement, this may be termed 'double hearsay,' *if both statements are offered to prove the facts asserted."* (Emphasis added.) McCormick, Evidence § 246, p. 585 (2d ed. 1972). In order to find "double hearsay" competent, we must find an exception to the hearsay rule for each of the out-of-court statements.

We discuss the witnesses' testimony regarding the neighbor's statement first. Courts have traditionally characterized such a statement as hearsay and then applied the *res gestae* exception. The *res gestae* exception ". . . appears to have been first used as a justification for admitting evidence of oral statements attending and connected with the transaction which was the subject of inquiry, without examining too closely the possible hearsay aspects of the declaration." 1 Stansbury's N.C. Evidence § 158, at p. 530-1. The exception has been criticized often as being too vague, and Judge Learned Hand once wrote that the phrase ". . . has been accountable for so much confusion that it had best be denied any place whatever in legal terminology." *United States v. Matot*, 146 F. 2d 197, 198 (2d Cir. 1944).

The better analysis of how to characterize the witnesses' testimony concerning the neighbor's statement is to say that the testimony is simply not hearsay. The testimony was not given as proof of the matter asserted. We are not concerned with whether the neighbor actually stated what the witnesses have alleged he did. Our only concern is that the neighbor made a statement which catapulted the Fritts family into action. "When it is proved that D made a statement to X, with the purpose of showing the probable state of mind thereby induced in X, . . . the evidence is not subject to attack as hearsay." *See* McCormick, Evidence § 249, pp. 589-90 (2d ed. 1972) and cases cited therein.

Next, we discuss the neighbor's statement regarding what defendant had told him. Defendant had told the neighbor that he ". . . want[ed] a piece of Tommy's and Billy's ass." Defendant was indicted for assault with a deadly weapon with intent to kill. "Where intent is *directly in issue,* as in cases involving . . . assault with intent to commit a felony, . . . a person's statements relative to his then existing intention are admitted without question." 1 Stansbury's Evidence § 162, pp. 541-2 (Brandis rev. 1973). Defendant's assignment of error is without merit.

[3] During the trial, defendant's counsel questioned Billy Ray Fritts regarding an assault charge pending against him. The question was important to the defense because Fritts was charged with assaulting defendant. The State objected to the question each time it was asked, and the trial court sustained the objections. Defendant assigns as error the court's action. Defendant's assignments are without merit. "[A] witness may not be cross-examined for impeachment purposes as to whether he has been indicted or is under indictment for a criminal offense." (Citations omitted.) *State v. Coxe,* 16 N.C. App. 301, 305-6, 191 S.E. 2d 923, *cert. denied* 282 N.C. 427 (1972).

Defendant's next assignment of error deals with comments made by the judge during the trial. We find that the judge's questioning of witness Roland Starr was exercised well within his power to do so. *State v. Horne,* 171 N.C. 787, 88 S.E. 433 (1916); and that the judge's comments to the jury regarding a side-bar conference and a witness's cursing were made in furtherance of his duty to run a fair and decorous trial. Defendant's assignment of error is without merit, borders on the frivolous, and is overruled.

[4] Defendant assigns as error prejudicial remarks made by the prosecutor during his closing argument to the jury which tended to place the burden of producing the gun defendant had allegedly used in the shooting on the defense rather than on the State. Defendant's counsel objected to the remarks, and his objection was sustained. " 'It is only in extreme cases of abuse of the privilege of counsel, and when the trial court does not intervene or correct an impropriety, that a new trial may be allowed.' " *State v. Morrison,* 19 N.C. App. 573, 574, 199 S.E. 2d 500, *cert. denied* 284 N.C. 257 (1973). The court sustained defendant's objec-

tion to the improper remarks. This was enough to remove any prejudice defendant may have suffered. *See State v. Correll*, 229 N.C. 640, 644, 50 S.E. 2d 717 (1948), *cert. denied* 336 U.S. 969 (1949). Defendant's assignment of error is without merit and is overruled.

[5] Defendant's final assignment of error is to the judge's submission to the jury of the charge of shooting into occupied property. Defendant asserts that his motion for nonsuit should have been allowed.

> Motion to nonsuit requires the trial court to consider the evidence in its light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom. (Citations omitted.) . . . [I]f there is evidence from which a jury could find that the offense charged has been committed and that defendant committed it, the motion to nonsuit should be overruled. (Citations omitted.) *State v. Goines*, 273 N.C. 509, 513, 160 S.E. 2d 469 (1968).

We find that there was more than sufficient evidence to withstand defendant's motion for nonsuit. Two members of the Fritts family, Tommy Joe and Billy Ray, testified that bullets were coming into the house and that two females were inside. Billy Joe Fritts testified that defendant "commenced shooting" and that bullets hit the corner of his house. Defendant's final assignment of error is without merit.

In defendant's trial we find

No error.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.