STATE OF NORTH CAROLINA v. ROBERT LEE POWELL

No. 174A81

(Filed 5 October 1982)

**1. Criminal Law § 73.1— hearsay statement by expert—not prejudicial**

The court erred in allowing an expert in the field of forensic serology to testify that someone at R. J. Reynolds Company told him that a figure of a small pine tree found on a cigarette butt found at the crime scene was "a registered trademark for their products." However, given the overwhelming evidence pointing to defendant's guilt, defendant failed to show that there was a reasonable possibility that had the error not occurred the result would have

been different and therefore that he was prejudiced by the admission of this one statement. G.S. 15A-1443(a).

**2. Rape and Allied Offenses § 1— first degree rape—employment of deadly weapon**

G.S. § 14-27.2 simply necessitates a showing that a dangerous or deadly weapon was employed or displayed in the course of a rape. Therefore, where the prosecuting witness weighed 98 pounds, was four months pregnant, defendant weighed 170 to 180 pounds, brandished a five to six inch knife blade to her throat, warned the prosecuting witness not to resist, and shortly thereafter forced her to submit to a sexual act, the evidence was sufficient to find that a dangerous or deadly weapon was employed in a manner consistent with that contemplated by G.S. § 14-27.2.

**3. Criminal Law § 117.2— possible bias of witness—instruction concerning proper**

There was no violation of G.S. § 15A-1222 in the trial court's charge to the jury on the possible interest, bias, or prejudice of all the witnesses.

APPEAL by defendant from a judgment entered by *Seay, J.* at the 26 August 1981 Criminal Session of the Superior Court, GUILFORD County, High Point Division.

Defendant was tried upon a bill of indictment charging him with the first degree rape of Cheryl Lee. He was found guilty and sentenced to life imprisonment. Pursuant to G.S. § 7A-27(a), defendant appeals his conviction to this Court, presenting for our consideration three assignments of error—the admission of hearsay testimony, insufficiency of the evidence respecting the "dangerous weapon" element of the offense, and what he deems to be an expression of opinion by the court in its charge to the jury. Based on the record before us, we find no error sufficient to warrant the granting of a new trial and therefore affirm defendant's conviction.

*Rufus L. Edmisten, Attorney General, by Blackwell M. Brogden, Jr., Assistant Attorney General, for the State.*

*Wallace C. Harrelson, Public Defender, and Joseph E. Bruner, Assistant Public Defender, for Defendant-Appellant.*

MEYER, Justice.

Defendant was accused of raping Cheryl Lee on 30 March 1981. Ms. Lee testified that she was employed as the manager of the Hunting Valley apartment complex in Guilford County. She arrived at her office in the model apartment at 10:00 a.m. The

defendant arrived as a visitor at 11:30 a.m. They had a brief conversation concerning the availability of an apartment, and toured the model apartment, including the upstairs bedrooms. Defendant followed Ms. Lee downstairs and as she approached her office, he grabbed her from behind. Putting a knife to her throat, the defendant told Ms. Lee to be quiet, stated that he wouldn't hurt her if she did what he said, and ordered her to an upstairs bedroom. Ms. Lee, in an effort to dissuade defendant, informed him that she was pregnant. Once upstairs, the defendant ordered her to remove her clothes and, against her will, had sexual intercourse with her. He left immediately, driving a light blue Pinto station wagon.

Other evidence against the defendant consisted of the following:

1.  A maintenance man noticed a "baby blue" Pinto station wagon parked in front of the apartment complex on the morning of 30 March. Defendant admitted that he was driving a light blue Pinto station wagon belonging to the Greensboro Daily News, for which he worked, on 30 March 1981, and that he took this car out at approximately 10:30 a.m.

2.  Defendant's girlfriend, Mary Mims, identified a red sweater as belonging to the defendant. Ms. Lee identified the same sweater as the one defendant was wearing when he entered the model apartment on the morning of 30 March.

3.  Ms. Lee identified the defendant from a photographic line-up, and identified him at trial as her assailant.

4.  An analysis of a semen sample taken from Ms. Lee's underpants matched defendant's blood grouping.

5.  Saliva samples taken from a cigarette which defendant allegedly left in the kitchen sink of the model apartment matched defendant's blood grouping. The cigarette butt was a Salem Ultra Light brand. Defendant smoked Salem Ultra Light cigarettes.

Defendant took the stand on his own behalf and denied ever having intercourse with Ms. Lee. He did not state where he was or what he was doing on the morning of 30 March.

[1] Defendant assigns as error the admission of certain testimony by Jed Taub, an SBI agent found by the court to be an expert

in the field of forensic serology. Taub testified that after examining the cigarette butt which was found in the sink of the model apartment and noticing a white cover bearing two bands and the figure of a small green pine tree, he telephoned the R. J. Reynolds Company, which produces Salem Ultra Light cigarettes, to inquire about which brand bore the figure of a small green pine tree. Over defendant's objection, he testified that "they told me that it is a registered trademark for their products." He then compared the figure on the cigarette butt taken from the crime scene to the figure on a Salem Ultra Light and they matched. The defendant contends that the agent's testimony as to what "they" told him on the phone is inadmissible hearsay.

The State puts forth the argument that Special Agent Taub was testifying as an expert and that personal knowledge of an expert is not limited to knowledge derived solely from matters personally observed, but also includes inherently reliable information provided by others. *State v. Wade*, 296 N.C. 454, 251 S.E. 2d 407 (1979). While this is an accurate statement of the law, it is inapposite to these facts. Special Agent Taub's expertise was in the field of forensic serology, not in the field of trademarks used to identify cigarette brands.

Since no violation of rights under the United States Constitution is alleged here, the test of whether the error is "prejudicial," *i.e.* reversible error, is set forth very specifically in G.S. § 15A-1443(a) as follows:

(a) A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.

In discussing the issue of whether error constitutes prejudice to a defendant Justice Exum in *State v. Easterling* correctly stated the test:

Such prejudice will normally be deemed to be present, in cases relating to rights arising other than under the Federal Constitution, *only* "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . ."

G.S. 15A-1443(a). Furthermore, the burden of showing that such a possibility exists rests upon the defendant.

300 N.C. 594, 609, 268 S.E. 2d 800, 809 (1980). *See State v. Jordan,* 305 N.C. 274, 277, 287 S.E. 2d 827, 829 (1982).

Assuming arguendo that the testimony complained of was inadmissible hearsay, given the overwhelming evidence pointing to defendant's guilt, he has failed to show that there is a reasonable possibility that had the error not occurred the result would have been different and therefore has not shown that he was prejudiced by the admission of this one statement.

[2] Defendant next assigns as error the trial court's denial of his motion for dismissal at the conclusion of the State's evidence and at the conclusion of all the evidence. The thrust of defendant's argument is that there was no testimony at trial that defendant "employed" or "displayed" a deadly or dangerous weapon in order to effectuate the rape. Ms. Lee testified on cross-examination that after leaving the kitchen, she did not see the knife and did not know what had happened to it.

Our Court has recently addressed this question in *State v. Sturdivant,* 304 N.C. 293, 283 S.E. 2d 719 (1981). In *Sturdivant,* this Court first pointed out that prior to the enactment of G.S. § 14-27.2, it was necessary for the State to show specifically that the weapon was used to overcome the victim's resistance or to procure her submission. The current statute, however, simply necessitates a showing that a dangerous or deadly weapon was employed or displayed in the course of a rape. 304 N.C. at 299, 283 S.E. 2d at 724-25. The Court went on to note that:

> 1. We perceive that the Legislature intended to make implicit in G.S. 14-27.2 a matter of ordinary common sense: that the use of a deadly weapon, in any manner, in the course of a rape offense, always has some tendency to assist, if not entirely enable, the perpetrator to accomplish his evil design upon the victim, who is usually unarmed.

*Id.* at 299, 283 S.E. 2d at 725.

We find that the facts of this case fall squarely within the spirit and intent of G.S. § 14-27.2(a)(2)(a) which provides as follows:

(a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

. . . .

> (2) With another person by force and against the will of the other person, and:
>
> > a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon;

. . . .

Ms. Lee weighed 98 pounds. She was four months pregnant. Defendant was described as a 5'11" black male weighing 170 to 180 pounds. Brandishing a five to six inch knife blade held to her throat, defendant warned Ms. Lee not to resist. Shortly thereafter, in an upstairs bedroom and without her consent, she was forced to submit to the sexual act. Under these circumstances, we hold that the State presented sufficient evidence that a dangerous or deadly weapon was employed in a manner consistent with that contemplated by G.S. § 14-27.2 to accomplish the offense.

[3] Defendant excepts to the following portion of the trial court's charge to the jury:

> Now, the Court instructs you: That when you come to consider the testimony of the various witnesses, it's your duty, members of the jury, to carefully consider and scrutinize the testimony of the Defendant, and of those who are closely related to him, taking into consideration the interests that they have in the outcome of this trial.

This, he argues, constituted an expression of opinion on the part of the court "since the court made no similar charge concerning the witnesses for the state and since the court had earlier charged that it was for the members of the jury to consider any interest, bias, or prejudice that any of the witnesses might have." This same argument, put forth in *State v. Bracey*, 303 N.C. 112, 124, 277 S.E. 2d 390, 398 (1981), was described as "meritless." The record before us does not disclose, nor does defendant suggest, that he requested a charge on interested witnesses who testified

for the State. *State v. Eakins,* 292 N.C. 445, 233 S.E. 2d 387 (1977). In fact, our reading of *Eakins* leads us to the conclusion that defendant defeats his argument by pointing out that the trial court had previously charged the jury on the possible interest, bias, or prejudice of *all* the witnesses. We find no violation of G.S. § 15A-1222 in this portion of the jury charge.

Defendant had a fair trial free of prejudicial error.

No error.