STATE OF NORTH CAROLINA v. IAN CHRISTOPHER GOBLET

No. COA04-925

(Filed 6 September 2005)

## 1. Evidence— hearsay—detective's testimony about pawn shop records—not offered for truth of matter asserted

The trial court did not err in a multiple felony breaking and entering, felony larceny, and felony possession of stolen goods case by concluding that a detective's testimony regarding his review of pawn shop records was not hearsay, because: (1) at no time during the detective's testimony were any of the pawn shop records admitted into evidence, nor was his testimony regarding the contents of those records used for any purpose other than to show the basis for his contacting the Kill Devil Hills Police; (2) the detective's testimony was not offered for the truth of the matter asserted; and (3) although the trial court found that the detective was the custodian or other qualified witness for purposes of introducing the pawn shop records under the business records exception, it is not necessary to determine whether this was error since the testimony did not need to qualify under an exception to the hearsay rule to be admissible.

## 2. Constitutional Law— right to confront witnesses—detective's testimony

The trial court did not err in a multiple felony breaking and entering, felony larceny, and felony possession of stolen goods case by concluding that a detective's testimony regarding his review of pawn shop records did not violate defendant's Sixth Amendment right to confront witnesses, because: (1) the pertinent records were subsequently admitted into evidence under the business records exception during the testimony of the owner of the pawn shop; and (2) defendant had the opportunity to, and in fact did, cross-examine the pawn shop owner.

## 3. Burglary and Unlawful Breaking or Entering; Larceny— breaking and entering—larceny—possession of stolen goods—motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss multiple charges for felony breaking and entering, felony larceny, and felony possession of stolen goods at the close of the State's evidence, because: (1) although the evidence on the

charges of felony breaking and entering and felony larceny was almost entirely circumstantial, this fact does not preclude it from being substantial evidence; and (2) the evidence presented by the State, including testimony from a witness who drove defendant to the pertinent houses, was sufficient to support a reasonable inference that defendant committed the offenses charged.

**4. Criminal Law— instruction—flight**

The trial court did not err in a multiple felony breaking and entering, felony larceny, and felony possession of stolen goods case by instructing the jury regarding flight, because: (1) on one occasion when defendant and his coparticipant were at one of the homes that was broken into, the homeowner returned and spoke with the coparticipant first and thereafter spoke with defendant when he came running around the house; and (2) the State introduced evidence that defendant gave officers a false name and date of birth when he was a passenger in a car stopped by police, and the driver indicated that she was taking defendant to the bus station so that he could go to Ohio.

**5. Possession of Stolen Property— found not guilty of underlying breaking and entering charge—possession conviction vacated**

Defendant's conviction on the charge of felony possession of stolen goods in case number 02 CRS 4610 is vacated because the jury found defendant not guilty of the underlying breaking and entering charge.

**6. Criminal Law— prosecutor's argument—failure to give curative instruction after sustaining objection**

The trial court did not abuse its discretion in a multiple felony breaking and entering, felony larceny, and felony possession of stolen goods case by failing to give a curative instruction to the jury after sustaining defendant's objection to an argument by the State during closing that the jurors were in court because of defendant's drug problem, nor did it commit plain error in failing to intervene ex mero motu to stop the district attorney from continuing the improper argument after defendant's objection was sustained, because: (1) defendant did not request a curative instruction to the jury regarding the district attorney's statements; and (2) in light of the evidence of defendant's heroin use, these arguments were not so improper as to require the court to issue such an instruction ex mero motu.

Appeal by defendant from judgments entered 9 October 2003 by Judge Jerry R. Tillett in Dare County Superior Court. Heard in the Court of Appeals 21 March 2005.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Lisa B. Dawson, for the State.*

*William D. Spence, for defendant-appellant.*

JACKSON, Judge.

Defendant, Ian Goblet, appeals from judgments entered on a jury verdict finding him guilty of six counts of felony breaking and entering, six counts of felony larceny and seven counts of felony possession of stolen goods.

At trial the State's evidence tended to show that during August, September, and October of 2002, there was a series of break-ins in residences on the Outer Banks. The break-ins were similar in that they generally occurred during the day, mostly jewelry and change were taken, and there was little or no sign of forced entry.

In the fall of 2002, Detective Roten of the Portsmouth Virginia Police Department was assigned the daily task of reviewing local pawn shop records. Detective Roten observed defendant's name appearing several times in pawn shop records as having pawned or sold numerous items of jewelry over a one to two month period. Based upon the records indicating the defendant's address was Kill Devil Hills, Detective Roten contacted the Kill Devil Hills Police Department to advise them of the suspicious activity. Officers in the Kill Devil Hills Police Department went to Portsmouth, photographed some of the items pawned by defendant that were still at the pawn shop, and took possession of those items. The seized items and photographs were shown to victims of the break-ins and some of the victims were able to identify items of jewelry that belonged to them. At trial, Detective Roten was allowed to testify, over defendant's objection, to the contents of the pawn shop records that aroused his suspicion regarding defendant.

Defendant was indicted on charges related to some of the break-ins on 23 September 2002. On 19 October 2002, an officer stopped a car driven by a female named Jamie Sargent ("Sargent"), in which defendant was a passenger, for a traffic violation. Defendant initially provided the officer with a false name, date of birth, and address. Once defendant's true identity was established, he was arrested

STATE v. GOBLET

[173 N.C. App. 112 (2005)]

based on the officer's knowledge of the recent indictments and defendant being listed on the most wanted list for the area. A search of the vehicle revealed drug paraphernalia leading to charges against Sargent. Sargent told investigating officers, and testified at trial that she had driven defendant to many homes in the area of the break-ins and took officers to two specific homes she had driven defendant to which were, in fact, homes that had been victimized. Sargent also related an incident that occurred at one of the homes when the homeowner had returned home while they were at the residence and she and defendant had interacted with the homeowner. This account matched the statement of an incident related by one of the victims. She also stated she accompanied defendant to the pawn shops in Portsmouth where he sold or pawned the items and that they used the money to purchase heroin. Sargent testified at trial pursuant to a plea agreement.

At the close of the State's evidence, defendant moved to dismiss the charges. The motion was denied. Defendant presented no evidence.

The District Attorney began her closing argument by saying: "Good morning. Ladies and gentlemen, you are here today because of an ever present problem in your society. And that problem is drugs." Defendant objected and the objection was sustained by the court. The District Attorney then continued with her closing argument stating that defendant was the type of person who fell prey to the problem of drug use and that his job was to support his drug habit. Defendant again objected and asked to approach the bench. After a short bench conference off the record, the District Attorney resumed her closing argument.

Defendant was found guilty of six counts of felony breaking and entering, six counts of felony larceny and seven counts of felony possession of stolen goods. Defendant was found not guilty of three counts of felony breaking and entering, two counts of felony larceny and two counts of felony possession of stolen goods. Defendant was sentenced within the presumptive range to a term of active confinement of eight months minimum and eleven months maximum on each count with the sentences to run consecutively. The court arrested judgment on six of the counts of possession of stolen goods.

On appeal from these judgments, defendant assigns as error: (1) the trial court's finding that Detective Roten was the custodian or other qualified witness of pawn shop records for purposes of admissibility of his testimony regarding his review of those records; (2) the

admission of Detective Roten's testimony regarding his review of the pawn shop records; (3) the trial court's denial of his motion to dismiss for insufficient evidence at the close of all evidence; (4) the trial court's instructions to the jury regarding flight; (5) the trial court's acceptance of the jury's verdict of guilty on the charge of felony possession of stolen goods when defendant had been found not guilty of the underlying breaking and entering charge; and (6) the trial court's failure to instruct the jury not to consider the District Attorney's allegedly improper closing argument.

[1] We will address defendant's first two assignments of error together. Defendant's basis for both of these assignments of error is that the testimony provided by Detective Roten was hearsay and therefore was inadmissible unless it fell within an exception to the hearsay rule. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2003). Hearsay is not admissible absent an applicable exception. N.C. Gen. Stat. § 8C-1, Rule 802 (2003). However, when a statement is not being offered for the "truth of the matter asserted," the statement is not considered hearsay and, therefore, is admissible even absent an applicable exception. *State v. Gainey*, 355 N.C. 73, 87, 558 S.E.2d 463, 473, (citing *State v. Call*, 349 N.C. 382, 409, 508 S.E.2d 496, 513 (1998)), *cert. denied*, 537 U.S. 896, 154 L. Ed. 2d 165 (2002).

In the case *sub judice*, Detective Roten was asked on direct examination about his duties as a police officer and he described his responsibilities with regard to monitoring the pawn shops in his jurisdiction. Detective Roten testified that his duties included reviewing daily reports of pawn shop transactions which are submitted to him pursuant to Virginia law. Detective Roten was then asked if he had become aware of defendant's name during the performance of his duties in the fall of 2002. Detective Roten answered that he had and that defendant's name appeared numerous times over the course of several weeks. Defendant objected to this testimony on the basis of hearsay and the judge conducted extensive *voir dire* on the objection outside the presence of the jury.

During *voir dire* Detective Roten testified that because of the frequency with which defendant's name appeared—twenty-five times—and because most of the transactions involved "large amounts" of jewelry, defendant's name caught his attention. He fur-

ther testified that because defendant's address on all of the reports listed Kill Devil Hills as his home, he contacted a detective that he knew in Kill Devil Hills, Detective Underwood, to advise him of the unusual activity. Detective Roten's contact with Detective Underwood initiated the investigation of defendant resulting in the instant case. During the *voir dire*, the court stated that Detective Roten's testimony regarding his review of the pawn shop records and his resulting actions were going to be allowed to show the basis for his actions. A statement which explains a person's subsequent conduct is an example of such admissible nonhearsay. *State v. Anthony*, 354 N.C. 372, 404, 555 S.E.2d 557, 579 (2001), *cert. denied*, 536 U.S. 930, 153 L. Ed. 2d 791 (2002).

Defendant also argued during *voir dire* that the testimony should be excluded under Rule 403 of the North Carolina Rules of Evidence as its probative value was substantially outweighed by its prejudicial effect. The exclusion of evidence under Rule 403 is within the sound discretion of the trial court. *CIT Group/Commercial Servs, Inc. v. Vitale*, 148 N.C. App. 707, 710, 559 S.E.2d 275, 276 (2002) (citing *Reis v. Hoots*, 131 N.C. App. 721, 727-28, 509 S.E.2d 198, 203 (1998), *disc. rev. denied*, 350 N.C. 595, 537 S.E.2d 481 (1999)).

The court also found that the pawn shop records fell within the business record exception to the hearsay rule and that Detective Roten was the custodian or other qualified witness for those records, that the records had an adequate degree of trustworthiness, and that the probative value of the evidence was not outweighed by the danger of unfair prejudice to defendant.

After the jury returned, Detective Roten testified as he had during *voir dire* regarding the number of transactions listed under defendant's name and the type of items involved in those transactions. He further testified regarding his initial contact with the Kill Devil Hills Police Department and his subsequent assistance in their investigation. At no time during Detective Roten's testimony were any of the pawn shop records admitted into evidence, nor was his testimony regarding the contents of those records used for any purpose other than to show the basis for his contacting the Kill Devil Hills Police. Detective Roten's testimony regarding the records was not offered for the truth of the matter asserted and, accordingly, was not hearsay. Although the trial court found that Detective Roten was the custodian or other qualified witness for purposes of introducing the pawn shop records under the business records exception to the hearsay rule, it is not necessary to determine whether this was error

as his testimony did not need to qualify under an exception to the hearsay rule to be admissible.

[2] Defendant also argues that Detective Roten's testimony regarding his review of the pawn shop records violated his Sixth Amendment right to confront witnesses against him. However, the records in question subsequently were admitted into evidence under the business records exception during the testimony of the owner of the pawn shop. The pawn shop owner whose records were at issue in this case was subject to cross-examination by defendant. Because defendant had the opportunity to, and in fact did, cross-examine the shop owner, his Sixth Amendment right to confront all witnesses against him was not violated.

[3] Defendant next argues that the trial court erred in failing to dismiss all charges at the close of the State's evidence as the evidence was insufficient to support convictions on the charges. The standard of review on a motion to dismiss for insufficient evidence is whether the State has offered substantial evidence of each required element of the offense charged. *State v. Williams*, 154 N.C. App. 176, 178, 571 S.E.2d 619, 620 (2002). Evidence is substantial if it is relevant and is sufficient to persuade a rational juror to accept a particular conclusion. *State v. Frogge*, 351 N.C. 576, 584, 528 S.E.2d 893, 899, *cert. denied*, 531 U.S. 994, 148 L. Ed. 2d 459 (2000). In ruling on a motion to dismiss for insufficient evidence, the court must view the evidence in the light most favorable to the State and every reasonable inference drawn from the evidence must be afforded to the State. *Id.* at 585, 528 S.E.2d at 899.

Defendant argues that the evidence presented by the State is sufficient only to arouse suspicion that he committed the offenses charged, which is not adequate to constitute substantial evidence. *State v. Malloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983). The State's evidence regarding the charges of felony breaking and entering and felony larceny is almost entirely circumstantial, however, this does not preclude it from being substantial evidence. When evaluating the sufficiency of circumstantial evidence in deciding a motion to dismiss for insufficient evidence a court must determine whether the circumstances could give rise to a reasonable inference of defendant's guilt. *State v. Thomas*, 296 N.C. 236, 244, 250 S.E.2d 204, 209 (1978). If the court determines that such an inference could be drawn, it must be left to the jury to determine whether the facts prove defendant's guilt beyond a reasonable doubt. *Id.* In deciding a motion

to dismiss for insufficient evidence, the weight of the evidence is not for the trial court's determination, but only whether it is sufficient to be submitted to the jury. *State v. Scott*, 356 N.C. 591, 597, 573 S.E.2d 866, 869 (2002).

In the case *sub judice*, the State presented evidence showing that: all but one of the break-ins and larcenies occurred between August and October of 2002; almost all of the offenses occurred between 9:00 a.m. and 12:00 p.m.; in all of the incidents coins and jewelry were taken; in three incidents the perpetrator also took one pillow case from the residence; and there was little or no damage to the doors of the residences or other indications of entry into the homes in any of the incidents. The State further presented the evidence from the pawn shop records and owners showing that defendant had pawned items later identified by the victims as items taken from their residences.

The State also presented Sargent's testimony that: she had driven defendant to approximately ten homes in the area of the break-ins during the time the incidents occurred; defendant would make sure no one was home and then enter the homes using a credit card to gain entry; on more than one occasion defendant gave her jewelry when he returned to the car; they used coins defendant took from the homes to pay for gas or redeemed them at coin sorting machines for paper money; defendant had brought coins back to the car in pillow cases on more than one occasion; and they would drive to a pawnshop in Portsmouth, Virginia after leaving the homes and defendant would go into the shop returning with money. Sargent also took officers to the neighborhoods where she had driven defendant and specifically pointed out two houses that were broken into.

The elements necessary to support the charge of felony breaking and entering are: (1) breaking or entering any building and (2) with the intent to commit any felony or larceny therein. N.C. Gen. Stat. § 14-54(a) (2003). Larceny is a common law offense and is not statutorily defined. The essential elements of common law larceny are: (1) the taking of the property of another; (2) the carrying away of the property; (3) without the consent of the owner; (4) with the intent to permanently deprive the owner of the property. *State v. Perry*, 305 N.C. 225, 233, 287 S.E.2d 810, 815 (1982). Because the State had charged defendant with felony larceny, pursuant to the State's basis for that charge, there also must be substantial evidence that the larceny was committed pursuant to a breaking and entering of a build-

ing without regard to the value of the property taken. N.C. Gen. Stat. § 14-72(b)(2) (2003). Finally, the elements required to support the offense of felony possession of stolen goods in this instance are: (1) possession of goods that are stolen and (2) that the person in possession knows or had reasonable grounds to know that the goods were stolen pursuant to a breaking and entering of a building. N.C. Gen. Stat. § 14-72(c) (2003).

We find that the evidence presented by the State was sufficient to support a reasonable inference that defendant committed the offenses charged. Accordingly, the charges and the evidence were properly submitted to the jury for determination of whether the evidence established that defendant committed the offenses. This assignment of error is overruled.

**[4]** Next defendant argues that the trial court erred in instructing the jury regarding flight. When there is some evidence in the record to support the theory that defendant fled after committing the offense charged, it is the duty of the jury to determine whether the facts and circumstances support the State's theory. *State v. Norwood,* 344 N.C. 511, 535, 476 S.E.2d 349, 360 (1996), (citing *State v. Tucker,* 329 N.C. 709, 723, 407 S.E.2d 805, 813 (1991)); *cert. denied,* 520 U.S. 1158, 137 L. E. 2d 500 (1997). It is not enough to show that defendant left the scene of the crime to support a jury instruction on flight, but "[t]here must also be some evidence that defendant took steps to avoid apprehension." *State v. Thompson,* 328 N.C. 477, 490, 402 S.E.2d 386, 392 (1991) (citing *State v. Levan,* 326 N.C. 155, 164-65, 388 S.E.2d 429, 435 (1990)).

The State's evidence tended to show that on one occasion when Sargent and defendant were at one of the homes that was broken into the homeowner returned. The homeowner first questioned Sargent about her presence and then spoke with defendant when he came running around the house. Defendant told the homeowner that he had been looking for a friend. The homeowner and Sargent's testimony regarding this incident were substantially consistent with one another. The State also introduced evidence that when Sargent was stopped by police while driving defendant to the bus station so he could go to Ohio defendant gave the officer a false name and date of birth. Both of these incidents adequately support the State's contention that defendant took steps to avoid apprehension and the jury was properly instructed on flight. Accordingly, this assignment of error is overruled.

STATE v. GOBLET

[173 N.C. App. 112 (2005)]

[5] Defendant's next argument is that the trial court erred in accepting the jury's verdict of guilty on the charge of felony possession of stolen goods in case number 02 CRS 4610 when the jury had found defendant not guilty of the underlying breaking and entering charge. When a charge of felony possession of stolen goods is based on the goods having been stolen pursuant to a breaking and entering a court cannot properly accept a guilty verdict on the charge of felony possession of stolen goods when defendant has been acquitted of the breaking and entering charge. *Perry*, 305 N.C. at 229-30, 287 S.E.2d at 813.

The State concedes this assignment of error in its brief. Because defendant was found not guilty of the underlying breaking and entering charge upon which the State based this charge of felony possession of stolen goods, we vacate defendant's conviction on this count of felony possession of stolen goods.

[6] Defendant's final argument is that the trial court erred in failing to give a curative instruction to the jury after sustaining his objection to an improper closing argument by the State. Defendant further argues that the trial court committed plain error in failing to intervene *ex mero motu* to stop the district attorney from continuing the improper argument after his objection was sustained.

The control of the arguments of counsel largely is left up to the discretion of the trial court and the propriety of counsel's remarks generally will not be reviewed unless the remarks are extreme or clearly intended to prejudice the jury. *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979). It is well established in this State that "when an objection is made to an improper argument of counsel and the court sustains the objection, that court does not err by failing to give a curative instruction if one is not requested." *Smith v. Hamrick*, 159 N.C. App. 696, 699, 583 S.E.2d 676, 679, *disc. rev. denied*, 357 N.C. 507, 587 S.E.2d 674 (2003); *see also State v. Correll*, 229 N.C. 640, 644, 50 S.E.2d 717, 720 (1948), *cert. denied*, 336 U.S. 969, 93 L. Ed. 1120 (1949); *State v. Barber*, 93 N.C. App. 42, 376 S.E.2d 497, *disc. rev. denied*, 328 N.C. 334, 381 S.E.2d 775 (1989); *State v. Sanderson*, 62 N.C. App. 520, 523, 302 S.E.2d 899, 901-02 (1983); *State v. Hammonds*, 45 N.C. App. 495, 499-500, 263 S.E.2d 326, 329 (1980). However, when the statements of counsel are grossly inappropriate it is proper for the court to correct the abuse *ex mero motu* even absent objection by the opposing party. *State v. Sanderson*, 336 N.C. 1, 15, 442 S.E.2d 33, 42 (1994).

The district attorney began her closing argument by stating:

> Good morning. Ladies and gentlemen, you are here today because of an ever present problem in your society. And that problem is drugs.

Defendant objected and the trial court sustained the objection. Defendant did not move to strike nor did he request a curative instruction. The district attorney then continued:

> Unfortunately, the people who fall prey to this problem are young adults, adults like Ian Goblet.

> Now on Monday morning each of you told us what you did for a living. Some of you your current job was as a real estate broker or a salesman or you're a restaurant owner. Others of you are retired as an engineer or housewife. But you have an honest job, an honest and a lawful job and the reason you do this job is to support yourself or your family.

> Now this is what makes Mr. Goblet different from you. He had a job too. His job wasn't honest and it surely wasn't lawful. Mr. Goblet is addicted to heroin so his job was to feed and support his heroin addiction. And this is how he went about his job everyday. He'd get up in the morning and the first thing that he would do is he would have a need for heroin and he had to feed that need. So he would wait until you and your neighbors would go to work.

At this point defendant again objected and asked to approach the bench. After an off the record bench conference the district attorney was allowed to continue her closing argument without any further comment from the judge or defendant.

At no time did defendant request that the court issue a curative instruction to the jury regarding the district attorney's statements. These statements, particularly in light of the evidence in the record of defendant's heroin use, were not so improper as to require the court to issue such an instruction *ex mero motu*. Accordingly, we hold that the trial court did not abuse its discretion in failing to give curative instructions regarding the statements to which defendant objected in the absence of a request to do so.

Defendant's contention that the court committed plain error in failing to give curative instructions *ex mero motu* also is without merit. In reviewing a plain error argument it is this Court's duty to

determine from the whole record whether "the instructional error had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 379 (1983) (citing *United States v. Jackson*, 569 F.2d 1003 (7th Cir.), *cert. denied*, 437 U.S. 907, 57 L. Ed. 2d 1137 (1978)). We hold that it did not in light of the fact that the evidence presented to the jury contained ample evidence of defendant's heroin use and involvement in the offenses charged. This assignment of error is overruled.

No error in part; vacated in part.

Chief Judge MARTIN and Judge HUDSON concur.