STATE OF NORTH CAROLINA v. HERBERT EARL LAWRENCE

No. COA07-1574

(Filed 5 August 2008)

**1. Evidence— shiny object—rape victim's impression of weapon**

The trial court did not err in a prosecution for first-degree rape and other offenses by admitting the victim's testimony that she saw a shiny object in defendant's hand and that she thought

it was a knife. The testimony is probative of whether the victim reasonably believed that defendant displayed a dangerous or deadly weapon, one of the statutory elements of the crime.

## 2. Evidence— rape—opinions of perpetrator's identity—not prejudicial

There was no prejudice in a prosecution for first-degree rape and other offenses in the admission of testimony from various witnesses about whether there was ever any question as to who committed the crime. The testimony was offered as an explanation of why the SBI protocol for the victim's sexual assault kit was not followed rather than for the truth of the matter. Moreover, defendant did not show a reasonable possibility of a different result without this evidence.

## 3. Rape— first-degree—evidence of weapon—sufficiency

The trial court did not err by denying defendant's motion to dismiss a charge of first-degree rape where there was an adequate evidentiary basis for the jury to conclude that the victim reasonably believed that defendant employed a deadly weapon to threaten the victim with death, whereby he effectively discouraged any further resistance. Defendant's threats were sufficiently connected in time to the acts for there to be a continuous transaction.

Judge ELMORE dissenting.

Appeal by Defendant from judgment entered 13 July 2007 by Judge J.B. Allen in Durham County Superior Court. Heard in the Court of Appeals 10 June 2008.

*Attorney General Roy Cooper, by Assistant Attorney General, Philip A. Lehman, for the State.*

*Cheshire, Parker, Schneider, Bryan and Vitale, by John Keating Wiles for Defendant.*

ARROWOOD, Judge.

Defendant appeals from judgment entered 13 July 2007 convicting him of first-degree rape and felonious larceny. We find no error.

The State's evidence tends to show the following: Jacqueline Brown (Brown) and Herbert Lawrence (Defendant) were neighbors in Durham, North Carolina, having first met in July 2005. Defendant

STATE v. LAWRENCE

[191 N.C. App. 422 (2008)]

and Brown began dating in August 2005 and continued dating for six weeks. Defendant, however, began to harass Brown with repeated phone calls to Brown at work and home, which concerned her. Defendant and Brown intended to remain friends after Brown ended their relationship, and they communicated with each other frequently until January 2006. At one point, however, Defendant's harassing calls made Brown so uncomfortable that she and her daughter left home to stay with a friend for three or four days.

At approximately 6:10 A.M. on Saturday, 28 January 2006, Brown stepped outside of her house to start her car to travel to a prayer meeting at her church. Unbeknownst to Brown, Defendant was hiding beside her car. Defendant revealed himself as Brown approached, and Defendant said, "Jackie, Jackie." Brown, startled by Defendant, screamed for help and ran back toward the house, tripping on a step in her haste. Defendant then threatened, "You better get up, or if you don't I'm going to kill you." Brown saw that Defendant carried an object in his hand, which she described as "silver . . . [and i]t reflected because I had my porch light on[.]" Brown "thought it was a knife." Defendant then dragged Brown into the house.

Once inside the house, Defendant began ranting about the termination of their relationship. Defendant lay Brown on her back in the living room, and Brown began pretending to have seizures. Defendant then moved Brown to the couch; Brown continued pretending to be unconscious and to have seizures, falling off of the couch and urinating on herself. Defendant undressed Brown, washed her and moved her to another place in the house.

Later that day, Defendant got on top of Brown and penetrated her vagina three times with his penis. Brown heard Defendant tell Brown's three-year-old daughter to go to her room. Brown remained in the living room Saturday, pretending to be unconscious and to have seizures. Late Saturday night or early Sunday morning, Defendant moved Brown to the bedroom, tied Brown's hands and feet to the bedposts, and left the room. Defendant said he did not trust her and believed she could be faking.

Early Sunday morning, Brown overheard Defendant tell her daughter to get dressed, after which Defendant entered the bedroom and penetrated Brown's vagina again with his penis while she lay on the bed. Afterwards, Defendant told Brown's daughter that "mommy [is] sick" and they "may have to take her to the doctor."

STATE v. LAWRENCE

[191 N.C. App. 422 (2008)]

Defendant then dressed Brown and moved her first to the living room couch and finally to the passenger seat in his car. Brown continued pretending to be unconscious and to have seizures. Defendant then drove the car, with Brown and Brown's daughter as passengers, away from the house. Defendant began driving recklessly, and Brown overheard Defendant making phone calls. In the first call, Defendant said, "[m]an, if anybody come [sic] looking for me, tell them you ain't [sic] seen me, you don't know where I'm at." In the second call, Brown overheard Defendant telling a coworker that his sister was in a coma and he was going to Rocky Mount. In the third call, Brown heard Defendant say, "Vicki, Vicki, answer the phone. . . . I need to talk to you." Brown knew that Vicki was Defendant's ex-wife who lived in Rocky Mount.

After Defendant made the phone calls, Defendant took Brown to a hospital in Rocky Mount. Brown heard Defendant tell the nurse that Brown was his sister and that she may be in a coma. The nurse said, "Jackie, open your eyes," but Brown did not open her eyes; Brown also did not respond to ammonia. When the nursing staff moved Brown inside the hospital, and away from Defendant, Brown opened her eyes and said that her child was in the car with Defendant, who was not her brother, and that Defendant had kidnapped and raped her. Nurses called the police, found numerous bruises on Brown's arms and thighs, and also bruising, swelling and tearing on and around Brown's vagina. Nurses also indicated the presence of semen with a Woods lamp.

Law enforcement responded to the call at the hospital and took Brown's statement. Police also found a damp washcloth in the bathroom sink at Brown's house and nylon stockings on the bed. Brown and her daughter stayed at a women's shelter in Rocky Mount for three months and did not return to Durham until April.

On Monday, January 30, Defendant did not come to work. Defendant's employer talked to Defendant and told him that the police were looking for him and that he needed to come to work. Defendant replied that he was in Rocky Mount. Defendant did not contact his employer again after that day. Investigator Charles Britt (Officer Britt) called Defendant and left messages on his cell phone, and Defendant returned his calls in tears and said, "I'm sorry for what I did." Defendant grew frightened that "I would go to jail for doing something like this" and fled in Brown's vehicle to Daytona Beach, Florida.

On 17 March 2006, Defendant was arrested in New Smyrna Beach, Florida. Defendant was cooperative and spoke freely to the police, giving a statement of the events of 28 and 29 January. When asked if Brown consented to sex, Defendant replied, "No. She was semi-conscious or almost unconscious. . . . No, she neither consented or opposed to [sic] having sex with me."

In April 2006, Brown received a letter from Defendant, which had a return address of a county jail in Daytona Beach, Florida; the letter stated: "I'm sorry that I hurt you and Cherish (Brown's daughter) in any kind of way. I didn't mean to. I can't change what has happened, but I definitely regret it. I'm paying for it now[.] . . . I do love you and Cherish, and I am indeed sorry for the wrong that I've done." Defendant then asked Brown to sign an affidavit enclosed with the letter, which stated that if called to testify, Brown would invoke her Fifth Amendment right to remain silent, and if given immunity, her testimony would vindicate Defendant. Brown gave the letter to an investigator with the Durham Police Department.

On 1 May 2006, Defendant was indicted on counts of first-degree rape, second-degree rape, first-degree kidnapping, second-degree kidnapping and felonious larceny of a motor vehicle. Defendant's trial began on 10 July 2007, and on 13 July 2007, a jury found Defendant guilty of first-degree rape, first-degree kidnapping, second-degree kidnapping and felonious larceny. Following the verdicts, the trial court entered judgment, sentencing Defendant consecutively to 288 to 355 months imprisonment on the first-degree rape conviction and 8 to 10 months imprisonment on the larceny conviction. The court continued judgment on the remaining counts. From these judgments, Defendant appeals.

## Admissibility of Evidence

**[1]** In Defendant's first argument, Defendant contends that the trial court erred by overruling his objection to Brown's testimony regarding the shiny object in Defendant's hand. We conclude the trial court did not err.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2007). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2007). " 'Whether or not to exclude evidence under Rule 403 of the Rules of Evidence is a matter within the sound discretion of the trial court and its decision will not be disturbed on appeal absent a showing of an abuse of discretion.' " *State v. Cunningham*, 188 N.C. App. 832, 836-37, 656 S.E.2d 697, 700 (2008) (quoting *State v. McCray*, 342 N.C. 123, 131, 463 S.E.2d 176, 181 (1995)). "[A] trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403[; however] such rulings are given great deference on appeal." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991).

At trial, Brown gave the following testimony, to which Defendant assigns error on appeal:

> When I saw him come from behind my car, my first reaction was, "Oh, my God. Oh, my God." I turned, and I tried to get back to my house. I have one step that I have to step up to get right on my porch. I tried to get there. . . . He came around . . . from around the side and jumped right onto the porch. I fell right there at the step in the porch. . . . I grabbed the railing, and I kept screaming.
>
> . . . .
>
> And he grabbed me, and he said, "Get up." . . . And he said, "I'll kill you. I'll kill you." He reached into his pocket to get something. I didn't see if it was a knife. I didn't see if it was a gun. I just saw something shiny. That was all I saw. I had my head down, and I was holding the railing like this. I was holding the railing, and I was still screaming. And he said, "Shut up. Shut up. I'm going to kill you."
>
> . . . .
>
> And so he grabbed the screen door, and he pulled my body in the door, and then he thought he had me in the door, but my foot got caught between the screen door. . . . And then when he realized that my foot was in the screen door, that's when he pushed back and then he finished pulling me in the house.
>
> Q: Okay. Now, when you said he reached in his pocket, which pocket do you remember?
>
> A: It was his left pocket, because he was turned—he reached in his left pocket.

**STATE v. LAWRENCE**

[191 N.C. App. 422 (2008)]

Q: Was it a shirt pocket, a coat pocket?

A: No, he had on a jacket because it was cold that morning. It was a short jacket.

Q: Now, you said you saw something shiny. Do you remember what color shiny?

A: It was just like—it was silver. It was just something silver. It reflected because I had my porch light on, because I flipped the porch light. It was dark.

Q: Could you tell what the size was of the object?

A: Honestly, no.

Q: What did you think it was?

A: I thought it was a knife.

[Defense Attorney]: Objection.

The Court: Overruled.

Defendant specifically contends that the foregoing portion of Brown's testimony was incorrectly admitted because her testimony was contradictory and speculative. Defendant argues that because Brown first testified that she "didn't see what [Defendant] had in his hand[,]" the trial court should not have admitted Brown's testimony that she "thought it was a knife." We disagree.

N.C. Gen. Stat. § 14-27.2(a)(2) (2007) states:

(a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

. . . .

(2) With another person by force and against the will of the other person, and:

    a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon[.]

The pertinent question on appeal is (1) whether the trial court abused its discretion by overruling Defendant's objection to the foregoing testimony under Rule 403 and (2) whether the trial court erred in its determination that the foregoing evidence was relevant pursuant to Rule 401. Defendant relies on *State v. Baker*, 320 N.C. 104, 357 S.E.2d

340 (1987), and *State v. Allen*, 80 N.C. App. 549, 342 S.E.2d 571 (1986), for the proposition that Brown's testimony was inadmissible due to its contradictory and speculative nature. In *Baker*, the Court stated that a grandmother's statements that the grandfather "stayed in 'the bathroom a long time[,]' " and that "the grandfather did not come immediately to let her in when she was locked out of the house[,]" were not relevant to the question of whether the grandfather was guilty of sexual assault. *Baker*, 320 N.C. at 108, 357 S.E.2d at 342. The Court further stated, "[i]f the grandmother had testified to these facts her conclusion that the grandfather had engaged in sexual relations with the granddaughter would have been too speculative to be admissible." *Id.*

In *Allen*, the Court concluded that the Defendant's proffered evidence that "another [unrelated] robbery [was] perpetrated by a man resembling defendant [who] utiliz[ed] an almost identical *modus operandi* [as Defendant,]" was irrelevant and inadmissible. *Allen*, 80 N.C. App. at 550, 342 S.E.2d at 572. The Court explained that "[e]vidence is relevant if it has any logical tendency, however slight, to prove the fact in issue[,]" and that the Defendant's proffered evidence was "so weak, so speculative and uncertain, that it did not possess sufficient probative value to justify receiving it in evidence." *Id.* at 551, 342 S.E.2d at 573.

The instant case is readily distinguished from *Allen* and *Baker.* Here, the trial court did not err by concluding that Brown's testimony that she thought Defendant held a knife, a dangerous weapon, had a logical tendency to prove the fact in issue—that Defendant "display[ed] . . . an article which [Brown] reasonably believe[d] to be a dangerous or deadly weapon[.]" N.C. Gen. Stat. § 14-27.2. Unlike the Defendant's proffered irrelevant evidence in *Allen* and *Baker*, Brown's statement, "I thought it was a knife[,]" is probative to the question of whether Brown reasonably believed that Defendant "display[ed] a dangerous or deadly weapon[.]" The trial court did not err. by admitting this evidence.

We believe the facts of this case are more closely analogous to *State v. King*, 256 N.C. 236, 239, 123 S.E.2d 486, 488 (1962), in which our Supreme Court reasoned that the "vague" testimony of the victim regarding "the time the alleged crime was committed by the defendant . . . goes to [the] weight [of the evidence] rather than to its admissibility." *Id.* As in *King*, we conclude that even though Brown's statement, "I thought it was a knife[,]" may have been speculative, this goes to the weight of the evidence, rather than its admissibility. The

trial court did not err by concluding that the statement was relevant to the question of whether Defendant "display[ed] a dangerous or deadly weapon or an article which [Brown] reasonably believe[d] to be a dangerous or deadly weapon[.]" N.C. Gen. Stat. § 14-27.2. Furthermore, the trial court did not abuse its discretion in determining under Rule 403 that the "probative value [of the evidence was not] substantially outweighed by the danger of unfair prejudice[.]" Rule 403. This assignment of error is overruled.

[2] In Defendant's second argument, he contends that the trial court erred by overruling his objection to the testimony of various witnesses regarding the prosecutor's question: "[was] there ever any question as to who committed this incident?"

Specifically, Defendant challenges the testimony of Officer Britt and Investigator Donna Jackson of the Durham Police Department (Officer Jackson) who were questioned about why certain procedures were not completed in their investigation. Specifically, when asked about SBI requirements, Officer Jackson stated:

A: The SBI has certain criteria that must be met before they will examine . . . a victim's sexual assault kit. . . .

[Defense Counsel]: Well, Your Honor, this item was never sent for testing, so I'd object to relevance to that. . . .

Q: Okay. And with regard to this particular crime, was there, to your knowledge and based on what the criteria that were given to you in terms of collecting evidence—was the identity of this suspect in question?

A: No.

[Defense Counsel]: Well, objection, Your Honor. . . .

The Court: Sustained. Motion to strike allowed.

Defense counsel requested a curative jury instruction, but the court did not give this instruction to the jury.

During the examination of Officer Britt, the State asked whether there was "ever any question as to who committed this incident," to which defense counsel objected. The court sustained defense counsel's objection, and the State then rephrased the question, asking whether "[i]n the course of your investigation, . . . the identity of the perpetrator [was] ever in question?" Defense counsel again objected, and the court overruled the objection, allowing Officer Britt to answer, "no[.]"

STATE v. LAWRENCE

[191 N.C. App. 422 (2008)]

Defendant argues that because the State used the word "perpetrator" instead of "suspect" that Defendant was "deprived . . . of the full effect of his not guilty plea[.]" Defendant cites *State v. Stegmann*, 286 N.C. 638, 652-53, 213 S.E.2d 262, 273 (1975), for the proposition that a plea of not guilty puts at issue not only whether the crimes charged were committed, but also whether the Defendant committed the crimes. We believe that Defendant's argument is misplaced, and conclude that *State v. O'Hanlan*, 153 N.C. App. 546, 570 S.E.2d 751 (2002), is controlling here. In *O'Hanlan*, a Deputy offered the following testimony:

Q. Did you find any [evidence]?

A. Any evidence of—

Q. Or were you looking for any?

A. I didn't need much evidence, sir, because I have a victim that had told me who her attacker was and from the look that her physical person was and the way she described the attack and her bruising and her scars, she told me who the attacker was and she gave me a name and a description. That's what I needed because I was fortunate I had an eye witness [sic] victim that survived.

*Id.* at 561-62, 570 S.E.2d at 761. On redirect, the State revisited the earlier testimony:

Q. There was a lot of questions here from counsel for the defendant about the fact that you didn't send [evidence] off [for scientific tests], you didn't send that off, you didn't do this or that check. What can you tell this jury about why you didn't have these things checked?

A. I had a victim that survived her attack. She could positively identify her assailant, the person that kidnapped, raped, and brutally beat her. If she had died—

[Defense Counsel]: Objection, Your Honor, speculative.

The Court: Overruled.

Q. Go ahead?

A. . . . I would have done more fingerprinting, more checking under fingernails, more fiber transfer, because I wouldn't have known who done it. But she positively told me who done it and I arrested him.

*Id.* at 562, 570 S.E.2d at 761. In upholding the trial court's admission of the foregoing testimony, the Court in *O'Hanlan* explained:

> The context in which this testimony was given makes it clear [the Investigator] was not offering his opinion that the victim had been assaulted, kidnapped, and raped by defendant, but was explaining why he did not pursue as much scientific testing of physical evidence in this case as he would a murder case because the victim in this case survived and was able to identify her assailant.

*Id.* at 562, 570 S.E.2d at 761. Further, this Court explained, "[h]is testimony was helpful to the fact-finder in presenting a clear understanding of his investigative process." *Id.* at 562-63, 570 S.E.2d at 761.

As in *O'Hanlan*, Officer Britt and Officer Jackson's testimony was not offered as an opinion that Defendant raped and kidnapped Brown; rather, Officer Britt and Officer Jackson explained why the SBI protocol with regard to examining the victim's sexual assault kit was not followed in this case. Here, Brown provided eyewitness testimony identifying Defendant. Moreover, Defendant freely made statements to the police that "[Brown] was semi-conscious or almost unconscious. . . . [and] she neither consented or opposed to [sic] having sex with me[.]"

Even assuming *arguendo* that the foregoing testimony was inadmissible, defendant has failed to demonstrate prejudice. To establish prejudicial error, a defendant must show there was a reasonable possibility that a different result would have been reached had the evidence been excluded. N.C. Gen. Stat. § 15A-1443(a) (2007). This assignment of error is overruled.

### Motion to Dismiss

[3] In Defendant's third argument, Defendant contends that the trial court erred by denying Defendant's motion to dismiss the charge of first degree rape for insufficient evidence. We disagree.

"The standard of review on a motion to dismiss for insufficient evidence is whether the State has offered substantial evidence of each required element of the offense charged." *State v. Goblet*, 173 N.C. App. 112, 118, 618 S.E.2d 257, 262 (2005). "Evidence is substantial if it is relevant and is sufficient to persuade a rational juror to accept a particular conclusion." *Id.* "In ruling on a motion to dismiss

for insufficient evidence, the court must view the evidence in the light most favorable to the State and every reasonable inference drawn from the evidence must be afforded to the State." *Id.*

The statute governing first-degree rape, N.C. Gen. Stat. § 14-27.2(a)(2) provides:

(a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

. . . .

(2) With another person by force and against the will of the other person, and:

a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon[.]

*See also State v. Worsley*, 336 N.C. 268, 275, 443 S.E.2d 68, 70 (1994).

Specifically, Defendant argues that "proof was lacking with respect to the use or employment of an object that Ms. Brown reasonably believed was a dangerous or deadly weapon." Therefore, the pertinent question is whether the State offered substantial evidence that Defendant displayed an article which Brown reasonably believed to be a dangerous or deadly weapon. N.C. Gen. Stat. § 14-27.2; *see also State v. Mayse*, 97 N.C. App. 559, 562-63, 389 S.E.2d 585, 586 (1990). Here, Brown testified that Defendant repeatedly stated that he would kill Brown:

And he grabbed me, and he said, "Get up." . . . And he said, "I'll kill you. I'll kill you." He reached into his pocket to get something. I didn't see if it was a knife. I didn't see if it was a gun. I just saw something shiny. . . .

I was holding the railing, and I was still screaming. And he said, "Shut up. Shut up. I'm going to kill you."

When specifically asked about the "shiny" object, Brown stated:

A: It was just like—it was silver. It was just something silver. It reflected because I had my porch light on, because I flipped the porch light. It was dark.

Q: Could you tell what the size was of the object?

A: Honestly, no.

Q: What did you think it was?

A: I thought it was a knife.

Brown's testimony tends to show that she was afraid of Defendant and believed her life was in danger; to protect herself, Brown feigned having seizures and unconsciousness for almost two days. In fact, Brown even urinated on herself to make her unconscious state more believable. We conclude that Brown's testimony as to Defendant's possession of a shiny, silver object, which she thought was a knife, together with the circumstances of Defendant's threatening behavior and statements such as "I'll kill you[,]" is sufficient evidence that Defendant displayed an article which Brown reasonably believed to be a dangerous or deadly weapon.

Finally, we examine whether there was sufficient evidence that Defendant "employed" the dangerous weapon as required by *State v. Langford*, 319 N.C. 340, 354 S.E.2d 523 (1987):

The statute, N.C.G.S. § 14-27.2, does not require a showing that a dangerous or deadly weapon was used in a particular manner in order to sustain a conviction for first degree rape. Instead it requires a showing only that such a weapon was "employed or displayed." Further, such a weapon has been "employed" within the meaning of N.C.G.S. § 14-27.2 when the defendant has it *in his possession at the time of the rape*.

*Id.* at 344-45, 354 S.E.2d at 525-26 (citations omitted) (emphasis added).

Prior to the Court's opinion in *Langford*, the Court stated in *State v. Sturdivant*, 304 N.C. 293, 283 S.E.2d 719 (1981), that "the Legislature intended to make implicit in G.S. 14-27.2 a matter of ordinary common sense: that the use of a deadly weapon, in any manner, in the course of a rape offense, always has some tendency to assist, if not entirely enable, the perpetrator to accomplish his evil design upon the victim, who is usually unarmed." *Id.* at 299 n.1, 283 S.E.2d at 725 n.1. The statute "simply necessitates a showing that a dangerous or deadly weapon was employed or displayed in the course of a rape period." *Id.* at 300, 283 S.E.2d at 725. "The plain meaning of the word 'employ' is 'to use in some process or effort' or 'to make use of.' " *Id.* (citing The American Heritage Dictionary of the English Language 428 (1969); Webster's Third New International Dictionary 743 (1964)).

In *State v. Powell*, 306 N.C. 718, 295 S.E.2d 413 (1982), the Court interpreted *Sturdivant* in the context of the following scenario:

In *Powell*, the defendant argued that there was no testimony at trial that defendant "employed" or "displayed" a deadly or dangerous weapon in order to effectuate the rape. In fact, the victim testified on cross-examination that after leaving her kitchen, she did not see the knife and did not know what had happened to it. However, the Court reasoned:

> Defendant . . . [b]randish[ed] a five to six inch knife blade [and] held [the knife] to [the victim's] throat[.] . . . [D]efendant warned [the victim] not to resist. Shortly thereafter, in an upstairs bedroom and without her consent, [the victim] was forced to submit to the sexual act. Under these circumstances, we hold that the State presented sufficient evidence that a dangerous or deadly weapon was employed in a manner consistent with that contemplated by G.S. § 14-27.2 to accomplish the offense.

*Id.* at 723, 295 S.E.2d at 416.

In *State v. Pruitt*, 94 N.C. App. 261, 380 S.E.2d 383 (1989), the deadly weapon employed by the defendant lay on a table eight feet away from the place where the sexual act occurred. In *Pruit*, the Court quoted *Langford*, stating:

> The North Carolina Supreme Court has held that the State is not required to prove "that a dangerous or deadly weapon was used in a particular manner in order to sustain a conviction for first degree rape." *State v. Langford*, 319 N.C. 340, 344, 354 S.E.2d 523, 525 (1987). The State is only required to show that defendant possessed a deadly or dangerous weapon at the time of the rape and that the victim was aware of the presence of the weapon, because it had been displayed or employed. *See id.* Although the trial court's instruction did not emphasize the victim's awareness of the weapon, the instruction made clear that the State was required to prove that the weapon was displayed in some fashion. The victim's testimony indicates that not only did defendant have a knife in his possession during his sexual assault on her, defendant threatened her with this knife, and the knife remained on the bedside table, within eight feet of defendant, throughout the attack.

*Id.* at 268, 380 S.E.2d at 386.

The Court again interpreted *Sturdivant* in *State v. Blackstock*, 314 N.C. 232, 333 S.E.2d 245 (1985), stating that *Sturdivant* "stands

for the proposition that if a weapon is employed or displayed in the course of the rape period it is sufficient to support the verdict of guilty upon a charge of first[-]degree rape." *Id.* at 241, 333 S.E.2d at 251. The Court defined the time frame encompassing the "rape period" with regard to the infliction of serious personal injury under N.C.G.S. § 14-27.2(a)(2)(b), an element which elevates rape and sexual offense from second to first degree offenses, by saying that "the element of infliction of serious personal injury upon the victim or another person in the crimes of first[-]degree sexual offense and first[-]degree rape is sufficiently connected in time to the sexual acts when there is a series of incidents forming one continuous transaction between the rape or sexual offense and the infliction of the serious personal injury." *Id.* at 242, 333 S.E.2d at 252.

The Court in *State v. Whittington*, 318 N.C. 114, 347 S.E.2d 403 (1986), applied *Blackstock* to the defendant's alleged employment of a deadly weapon during the course of a sexual assault, in which the victim wrestled the deadly weapon from the defendant's hands. The defendant contended that he "did not employ or display a dangerous or deadly weapon during the commission of·the sexual assault since prior to the act the victim managed to take the knife away from him and throw it out of his grasp." *Id.* at 118, 347 S.E.2d at 405. In *Whittington*, the following transpired:

> [T]he victim testified that after engaging in a brief conversation with defendant at the front of the car wash, "[defendant] had a knife pulled on me and he said if I didn't do what he said—that I had better do what he said because he had a gun in his back pocket." Defendant grabbed the victim and began dragging her to the rear of the car wash. During this time, the victim placed both hands on the blade of the knife to keep it from getting close to her. After defendant had dragged the victim about eighty feet, both fell to the ground and the victim "twisted the knife out of his hand and got it away from him." During the struggle, the victim lost consciousness. When the victim awakened, she felt defendant penetrate her vagina with his finger.

*Id.* at 119-20, 347 S.E.2d at 405-06. The Court reasoned that the foregoing testimony revealed "a series of incidents forming a continuous transaction between defendant's wielding the knife and the sexual assault." *Id.* "The knife was employed during this period of time in an effort to force the victim to give in to defendant's demands." *Id.* Therefore, the Court concluded that "[u]nder the holdings in

*Sturdivant* and *Powell*, it is of no consequence that defendant was not in possession of the deadly weapon at the precise moment that penetration occurred," because "[t]he knife had been used during the course of the assault to assist the perpetrator in accomplishing his evil design upon the victim who was unarmed." *Id.*

In the instant case, viewing the foregoing statements of the victim in the light most favorable to the State, with the benefit of every reasonable inference arising therefrom, we hold that there was an adequate evidentiary basis for the jury to conclude that the victim reasonably believed that Defendant employed a deadly weapon to threaten the victim with death, whereby he effectively discouraged any further resistance. Defendant's threats were "sufficiently connected in time to the sexual acts" such that there was "a series of incidents forming one continuous transaction between the rape" and the employment of what Brown reasonably believed to be a dangerous weapon. *Blackstock*, 314 N.C. at 242, 333 S.E.2d at 252. Such evidence satisfied the requirements of N.C. Gen. Stat. § 14-27.2. *See Sturdivant*, 304 N.C. at 300, 283 S.E.2d at 726; *Powell*, 306 N.C. at 722, 295 S.E.2d at 416; *Whittington*, 318 N.C. at 118, 347 S.E.2d at 405.

The trial court did not err in denying Defendant's motion to dismiss the charge of first-degree rape. This assignment of error is overruled.

No Error.

Judge WYNN concurs.

Judge ELMORE dissents by separate opinion.

ELMORE, Judge, dissenting in part.

I respectfully dissent from that part of the majority opinion holding that the trial court did not err by denying defendant's motion to dismiss because I would vacate defendant's first-degree rape conviction and remand for entry of judgment on second-degree rape and resentencing.

As explained in the majority opinion, defendant was indicted and convicted under the theory that he "[e]mploy[ed] or display[ed] a dangerous or deadly weapon or an article which the other person reasonably believe[d] to be a dangerous or deadly weapon . . . ." N.C. Gen. Stat. § 14-27.2(a)(2)a (2007). However, the record only shows

that when defendant forced Ms. Brown into his house, he displayed a shiny, silver object that Ms. Brown thought was a knife. Even if her testimony were sufficient to show that Ms. Brown reasonably believed that defendant displayed a dangerous weapon at this time, which I do not believe is the case, there was no evidence that defendant displayed the alleged weapon during the rapes.

Our Supreme Court has explained that although § 14-27.2 "does not require a showing that a dangerous or deadly weapon was used in a particular manner in order to sustain a conviction for first-degree rape," the defendant must have the weapon *"in his possession at the time of the rape." State v. Langford,* 319 N.C. 340, 344, 354 S.E.2d 523, 525-26 (1987) (citations omitted) (emphasis added); *see also State v. Roberts,* 310 N.C. 428, 434-35, 312 S.E.2d 477, 481 (1984) (affirming the denial of a motion to dismiss because the evidence showed that the defendant employed or displayed a dangerous weapon "during the course of the rape").

Here, there was no evidence that defendant had the alleged knife in his possession at the time of the rapes. Ms. Brown testified that she had her eyes closed and was feigning a seizure at the time of the rapes. She testified that she closed her eyes on Saturday morning after defendant dragged her into her house and did not open them again until Sunday afternoon when she arrived at the hospital and could no longer hear defendant. During her cross-examination, she confirmed that she "never saw that silver object again" after defendant initially displayed it. Her testimony strongly suggests that a significant period of time passed between when defendant forced her into the house and when he raped her. She testified that she started seizing on the floor, and "eventually" defendant moved her from the floor to her couch, where she continued seizing. She said, "And I stayed there, and I did that for I don't know how long. I did it until the point, because it was so long in the day that I had to go to the bathroom."

Accordingly, I would hold that the trial court erred by denying defendant's motion to dismiss because the State did not present sufficient evidence to support a finding that defendant employed or displayed a dangerous weapon during the rape. In all other respects, I concur with the majority opinion.