STATE OF NORTH CAROLINA v. EVERETT LEE LEWIS

No. 833SC822

(Filed 5 June 1984)

1. **Constitutional Law § 45— refusal to permit dismissal of appointed counsel**

Defendant did not make an unequivocal demand to represent himself, and the trial court thus did not err in refusing to permit defendant to dismiss his appointed attorney and make his own final closing argument, where defendant asked to be allowed to testify in his own defense when his attorney conceded

in his closing argument that defendant was not totally innocent; the trial court refused to permit defendant to reopen the evidence; defendant stated that he preferred his attorney "not to finish it anymore"; when the court stated that it would not allow defendant to make any closing statement to the jury, defendant asked whether the record was going to reflect that he had not been allowed to take the stand or dismiss his attorney; and defendant had expressed dissatisfaction with his attorney on other occasions during the trial, and when pressed by the court for a decision as to whether he wished to represent himself, he indicated that he did not wish to do so and allowed the attorney to continue.

**2. Kidnapping § 1.2— removal without victim's consent—sufficiency of evidence**

The evidence was sufficient for the jury to find that defendant removed the victim from the trailer where she was residing without her consent so as to support his conviction of kidnapping where it tended to show that defendant broke into the trailer, stuffed something in the victim's mouth to keep her from screaming, and hit the victim's mother in the face with his fist when she entered the room; defendant was emotionally out of control and acted like a madman; defendant told the women he had a knife although he never displayed one; defendant ordered the women about and said that the victim had to go with him and the victim's mother when they left the trailer; and the victim and her mother were fearful of defendant because of his words and actions and felt constrained to do as he told them.

**3. Criminal Law § 34.2— evidence showing other crimes—harmless error**

A deputy sheriff's testimony which revealed to the jury that defendant was being sought on other warrants at the time he was arrested on the instant charges was erroneously admitted, but such error was not so prejudicial as to entitle defendant to a new trial in view of the overwhelming evidence against defendant.

**4. Criminal Law § 138— sexual offense—kidnapping—age of victim as aggravating circumstance**

The trial court erred in finding as an aggravating factor in sentencing defendant for second-degree sexual offense and first-degree kidnapping that the victim was very young where the victim was 17 years old at the time of the crimes, since the victim was not so extremely young as to make her age reasonably related to the purposes of sentencing.

APPEAL by defendant from *Llewellyn, Judge.* Judgments entered 17 February 1983 in Superior Court, CARTERET County. Heard in the Court of Appeals 13 February 1984.

Defendant was convicted of misdemeanor breaking or entering, second degree sexual offense, first degree kidnapping, second degree kidnapping and attempted second degree rape, and sentenced to a term of imprisonment. From the judgments entered, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General William R. Shenton, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Marc D. Towler, for defendant appellant.*

WEBB, Judge.

**[1]** Defendant first argues the trial court committed reversible error in refusing to allow him to dismiss his attorney and make his own final closing argument. After defendant's attorney conceded in his closing argument that defendant was not totally innocent, defendant asked to be allowed to testify in his own defense. The court treated defendant's request as a motion to reopen the evidence and denied it. In response, defendant stated that he preferred that his attorney "not to finish it anymore." When the court stated that it would not allow defendant to make any statement to the jury in closing, defendant asked whether the record was going to reflect that he had not been allowed to take the stand or dismiss his attorney. He was told that it would.

It is well settled that a defendant has a constitutional right to represent himself without an attorney when he voluntarily and intelligently elects to do so. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed. 2d 562 (1975); *State v. Robinson,* 290 N.C. 56, 224 S.E. 2d 174 (1976). But in order for a defendant to be entitled to represent himself, he must make an unequivocal demand to do so. *See State v. Gerald,* 304 N.C. 511, 284 S.E. 2d 312 (1981). We do not believe that defendant's comments when considered in the light of all the facts constituted an unequivocal demand for self-representation.

Defendant's comments must be considered in the context of what occurred previously in this case. From the very beginning, defendant expressed dissatisfaction with his court-appointed attorney and sought to have him removed both at the preliminary hearing and at the arraignment. The court advised defendant that if the attorney was removed, defendant would either have to hire his own attorney or represent himself. Defendant decided to continue to be represented by the attorney until he retained other counsel. Defendant did not in fact retain other counsel and proceeded to trial represented by the appointed attorney. At trial, defendant and his attorney disagreed strongly over whether a

certain line of questioning should be pursued on cross-examination. During the court's discussions with defendant and the attorney regarding the disagreement, the court advised defendant of his right to represent himself and asked him repeatedly whether he wished to represent himself or be represented by his attorney. Defendant's answers clearly show he did not wish to represent himself. It appears that the sole purpose of defendant's complaining was not to get his attorney removed but was to get the court to order the attorney to conduct the defense in accordance with defendant's directions.

In light of defendant's previous disruptive behavior, the court could reasonably have interpreted defendant's remark that he preferred that his attorney not finish it anymore as simply one further expression of his dissatisfaction with the attorney's performance rather than as a serious request to dismiss the attorney. When defendant made similar comments earlier in the trial and was pressed by the court for a decision as to whether he wished to represent himself, he indicated that he did not wish to do so and allowed the attorney to continue. If defendant truly wanted to represent himself, he should have made a clear and unequivocal demand to do so rather than merely suggesting it through his offhand remarks as he did. Furthermore, defendant cannot claim he was surprised or prejudiced by his attorney's remarks during the closing statement because the attorney had made a similar remark in his opening statement. We hold the court did not commit reversible error in refusing defendant's request.

[2]  Defendant next assigns as error the court's denial of his motion to dismiss the charge of kidnapping Hope Oglesby. G.S. 14-39(a) provides that one of the essential elements of kidnapping is that the confinement, restraint or removal of the victim be without the victim's consent. Defendant contends the evidence was insufficient for the jury to find beyond a reasonable doubt that defendant removed Hope Oglesby from the trailer where she was residing without her consent.

The evidence viewed in the light most favorable to the State, as it must be on a motion for nonsuit, *see State v. Conrad*, 293 N.C. 735, 239 S.E. 2d 260 (1977), shows the following: Early in November 1982, Peggy Oglesby, who had been dating the defendant for almost two years, terminated her relationship with de-

fendant, thus making him very angry. After the break-up, Mrs. Oglesby moved out of her house and into a trailer owned by a friend because she was afraid of defendant. At about 3:00 or 3:15 a.m. on 20 November 1982, Mrs. Oglesby's 17-year-old daughter, Hope, who was sleeping on a couch in the trailer, awakened to find defendant on top of her. Defendant stuffed something in her mouth and told her to go to the back bedroom. He told Hope he had a knife. Hope knocked defendant's hands away from her mouth and screamed, awakening her mother.

When Mrs. Oglesby opened the bedroom door, defendant hit her on the forehead with his fist and knocked her back on the bed. Defendant then told her he was sorry and expressed his love for her. He told Mrs. Oglesby and Hope to lie on the bed with their hands behind their backs. Defendant did not threaten or mistreat them but was emotionally out of control and acted like a madman. He talked about still loving Mrs. Oglesby and not wanting to end their relationship. During the incident, defendant left the bedroom a couple of times to get some fresh air and once to get a drink from the refrigerator. Although Mrs. Oglesby had a loaded pistol in the bedroom, she did not get it.

Defendant told Mrs. Oglesby and Hope that he wanted them to drive him back to the place where he was staying. Mrs. Oglesby asked him to let Hope stay but defendant said she had to go with them. He walked Mrs. Oglesby and Hope to the car. He told them not to try anything funny and that he would let them go if they took him where he wanted to go. Mrs. Oglesby testified they went with defendant because they were afraid not to and that she did not go with him of her own free will. Hope testified that her mother told her to comply with defendant's instructions because she was afraid of what would happen. Although defendant held Hope's arm as he walked her to the car, he did not physically force her to go with him, nor did she struggle. Just outside the trailer park, defendant ordered Mrs. Oglesby to stop at a deserted gas station whereupon he got out for a moment and put something in the car. Although the women could have driven off and left defendant, Mrs. Oglesby refused her daughter's request to do so because she said she did not want defendant to get away. Defendant directed Mrs. Oglesby to drive to the end of a deserted road. Once there, defendant turned off the car and took the keys.

Subsequently, defendant tied the women up and the sexual offenses occurred.

We believe the evidence is sufficient for the jury to find beyond a reasonable doubt that Hope Oglesby did not leave the trailer of her own free will but did so only because she feared for the safety of herself and her mother. The evidence tends to show that Hope and her mother were fearful of defendant because of his words and actions and felt constrained to do as he told them. They said defendant was emotionally out of control and acted like a madman. Defendant told the women he had a knife and although he never displayed one, he did use a significant amount of force during the incident. He broke into the trailer, laid on top of Hope, stuffed something in her mouth to keep her from screaming, and hit Mrs. Oglesby in the face with his fist when she entered the room. He ordered the women about and said that Hope *had* to go with him and Mrs. Oglesby when they left the trailer. The fact defendant did not physically force Hope to leave with him is not determinative because the use of actual physical force or violence is not always necessary to the commission of the offense of kidnapping. *See State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966). The fact the women did not escape by driving away while at the gas station is irrelevant because at that point defendant had already taken Hope from the trailer without her consent, thus the kidnapping had already occurred. We find this assignment of error to be totally without merit.

[3] Defendant assigns as error the trial court's refusal to declare a mistrial when the deputy sheriff revealed to the jury that defendant was being sought on other warrants at the time he was arrested on the instant charges. While testifying, the deputy sheriff stated:

"I came over to the Sheriff's Department and I got in touch with Frank Galizia and Special Agent Larry Smith and met with us here, and so we set up the, for them to meet Peggy Oglesby and for them to get in the car there and then to go on out there and proceed on out there to pick up Everett, because see, I had other warrants for him and that's one of the reasons why I had an interest in it, and—in catching him."

The general rule is that in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. *See State v. Duncan*, 290 N.C. 741, 228 S.E. 2d 237 (1976); *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). Although the admission of this evidence was probably erroneous, we do not believe it was so prejudicial as to entitle defendant to a new trial. In view of the overwhelming evidence against defendant, we do not believe there is any reasonable possibility that a different result would have been reached at the trial had this evidence not been admitted. Thus, defendant has failed to show he is entitled to relief. *See* G.S. 15A-1443.

[4] Lastly, defendant contends the trial court erred in finding as an aggravating factor in sentencing him on the convictions of second degree sexual offense and first degree kidnapping that the victim was very young. We agree. This Court has previously stated that under some circumstances the extreme old age or extreme youthfulness of the victim may increase the offender's culpability because of the victim's relative defenselessness. *See State v. Gaynor*, 61 N.C. App. 128, 300 S.E. 2d 260 (1983). Here, the victim was 17 years old at the time the offenses occurred. We do not believe that a 17-year-old rape or kidnapping victim is so extremely young as to make her age reasonably related to the purposes of sentencing. We hold defendant is entitled to a new sentencing hearing on his convictions of second degree sexual offense and first degree kidnapping.

No error in defendant's trial; remand for re-sentencing in case numbers 82CRS9769 and 82CRS9771.

Chief Judge VAUGHN and Judge JOHNSON concur.