STATE OF NORTH CAROLINA v. DANNY RAY WISE

No. COA05-1018

(Filed 20 June 2006)

**1. Evidence— hearsay—Sex Offender Registration documents—records of regularly conducted activity**

A Sex Offender Registration Worksheet and Notice of Pending Registration were records of regularly conducted activity under N.C.G.S. § 8C-1, Rule 803(6) and were properly admitted into a prosecution for failing to register as a sex of-

fender. Although police reports are specifically excluded under Rule 803(8), the inadmissibility of evidence under one hearsay exception does not necessarily preclude admission under another exception.

**2. Criminal Law— judge's discussion with attorneys—case reopened—judicial neutrality**

The trial court did not depart from its neutral role in a prosecution for failing to register as a sex offender when it conducted a discussion with the attorneys away from the jury about whether the State had to produce evidence of defendant's release date (due to the effective date of the statute), which the State had not done and was opposed to doing, and then allowed the State to reopen its case to introduce that missing evidence.

**3. Criminal Law— State allowed to reopen case—no abuse of discretion**

The trial court did not abuse its discretion by allowing the State in a prosecution for failing to register as a sex offender to reopen its case and present evidence of defendant's release date from prison after the parties had rested but before the case was given to the jury.

**4. Sexual Offenses— failing to register as sex offender—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss a charge of failing to register as a sex offender where defendant contended that there was no evidence that he had failed to change his registered address within ten days of moving, but the language of his confession, taken in the light most favorable to the State, was sufficient to permit the inference that defendant had not lived at the registered address within ten days of his arrest.

Appeal by defendant from judgment entered 12 January 2005 by Judge W. Erwin Spainhour in Cabarrus County Superior Court. Heard in the Court of Appeals 30 March 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Ashby T. Ray, for the State.*

*Mercedes O. Chut for defendant appellant.*

McCULLOUGH, Judge.

Danny Ray Wise (defendant) appeals from a conviction and judgment for failing to register as a sex offender. We hold that he received a fair trial, free from prejudicial error.

Facts

On 17 August 1995, defendant was convicted in Cabarrus County Superior Court of indecent liberties with a child. Pursuant to this conviction, defendant was required upon release from prison to register as a sex offender with the North Carolina Sex Offender and Public Protection Registry and to notify the local sheriff of a change in address within ten days of moving. N.C. Gen. Stat. § 14-208.11 (2005); N.C. Gen. Stat. § 14-208.7 (2005).

Defendant completed the initial registration requirements with the Cabarrus County Sheriff's Office in early June of 1998 following his release from prison, and notified the sheriff's office of a change in address on six separate occasions.

In June 2003, defendant informed the Cabarrus County Sheriff's Office that his address was 1000 Saint John's Church Road, Concord, North Carolina. On 1 July 2004, a sheriff's deputy attempted to locate defendant at this registered address, but he was unable to do so. The deputy also looked for defendant at 176 Cabarrus Avenue and at an address on Mooney Road, both in Concord, North Carolina. The deputy was unable to locate defendant at either residence. The next day, defendant telephoned the deputy and told him that he knew the deputy was looking for him because he was hiding in some bushes at the 176 Cabarrus Avenue address and saw the deputy arrive. Defendant also informed the deputy that he was not living at the registered address and that he was living at the 176 Cabarrus Avenue address. He promised to turn himself in once he made some money. The deputies arrested defendant the next day while he was at work.

Defendant was interviewed following his arrest. He waived his *Miranda* rights and made the following statement:

> I, Danny Wise, didn't stay with my father at 1000 Saint John's Church [R]oad Concord, NC 28025 because when [sic] went to live there, Marge Isenhower was living with my father. She is a bitch and I didn't want to be around her and her daughter. They knew what I was charged with and I thought they might get me in trouble. Marge took my mother's pictures off the wall. I didn't

like her and could not live with-her. So, then I went to 40406 Millingport Road Stanfield, NC in Stanly County, NC. I lived with my sister Cheryl Lefler and "Toppy" Clifford Hyatt. Lately, I have been living with "Scooter" Donald Roses at 176 Cabarrus Avenue, Concord, NC 28025. Today I am changing my registration to this address. I understand that if I move from this address I must change it with the sheriff within 10 days.

A Cabarrus County jury convicted defendant of failing to register as a sex offender pursuant to N.C. Gen. Stat. § 14-208.11. The trial court sentenced defendant as an habitual felon to 120-153 months of imprisonment.

Defendant now appeals to this Court.

## Legal Discussion

### I.

[1] In his first argument on appeal, defendant contends that the trial court erred by admitting a "Notice of Pending Registration" and a "Sex Offender Registration Worksheet." Both documents were used to prove the date of defendant's release from prison. The trial court admitted these documents pursuant to both Rule 803(6) and Rule 803(8) of the North Carolina Rules of Evidence. We conclude that the trial court properly admitted the documents under Rule 803(6). This conclusion makes it unnecessary for us to address defendant's argument concerning Rule 803(8).

Rule 803(6) of the North Carolina Rules of Evidence makes records of regularly conducted activity admissible as a specific hearsay exception. "Records of regularly conducted activity" is defined to include:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession,

occupation, and calling of every kind, whether or not conducted for profit.

N.C. Gen. Stat. § 8C-1, Rule 803(6) (2005). This Court has previously held a police report or record is admissible under Rule 803(6) upon a showing that it is the practice of the police to generate and keep such a report or record. *See, e.g., Nunnery v. Baucom,* 135 N.C. App. 556, 565, 521 S.E.2d 479, 485 (1999); *Wentz v. Unifi, Inc.,* 89 N.C. App. 33, 39, 365 S.E.2d 198, 201 (1988).

In the instant case, the trial court admitted two different documents. The first was a "Notice of Pending Registration," which is a form that notifies local law enforcement officers of the date of release for a sex offender planning to live in their county and indicates that the offender is expected to register his new address with that agency within ten days. Deputy Burgess offered the following testimony concerning the Notice of Pending Registration the Cabarrus County Sheriff's Office received for defendant:

[PROSECUTOR]: [Deputy] Burgess, first of all, let me ask you, are you currently in your activities with the sheriff's department considered the records custodian for [defendant]'s file as it pertains to his registration requirements?

[DEPUTY BURGESS]: Yes, I am.

. . . .

[PROSECUTOR]: Now, let's go back to June of 1998. If a person is . . . incarcerated for a sex offense, such that it would otherwise be a reportable conviction, is a sheriff's department notified as to when they are being released?

[DEPUTY BURGESS]: Yes, they are.

. . . .

[PROSECUTOR]: How does that occur?

[DEPUTY BURGESS]: When a defendant is to be released from the Department of Correction, the Department of Correction issues a digital criminal information [DCI] system message to the county in which the sex offender is going to reside.

[PROSECUTOR]: And do they still do it that way today?

[DEPUTY BURGESS]: Yes, they do.

**STATE v. WISE**

[178 N.C. App. 154 (2006)]

[PROSECUTOR]: Now, is there a document in your file that is consistent with the documents that you received currently here in 2005 from DCI?

[DEPUTY BURGESS]: Yes, there is.

[PROSECUTOR]: (Hands Witness Exhibit) I am going to show you what's previously been marked as State's Exhibit Number 11. Can you identify this document?

[DEPUTY BURGESS]: Yes, I can.

[PROSECUTOR]: And what is that?

[DEPUTY BURGESS]: It is the message that the Department of Correction sent our agency.

[DEFENSE ATTORNEY]: Objection, unless he has personal knowledge of it.

[THE COURT]: Objection is overruled. It is admitted under Rule 803(6)—strike that. Yes, sir, Rule 803(6) of the Rules of Evidence.

[PROSECUTOR]: Was this, in fact, obtained from your file on Danny Wise?

[DEPUTY BURGESS]: Yes, it was.

The trial court also admitted a "Sex Offender Registration Worksheet" which defendant completed with the assistance of Deputy Deaver of the Cabarrus County Sheriff's Office. This document contained, *inter alia*, background information about defendant and his date of release from prison following his conviction for a sex offense. Deputy Deaver did not testify; however, Deputy Burgess offered the following testimony concerning the document:

[PROSECUTOR]: (Hands Witness Exhibit) Now, I am going to show you another document that has previously been marked as State's Exhibit Number 12. Can you identify this document?

[DEPUTY BURGESS]: Yes that's the sex offender registration worksheet.

[PROSECUTOR]: Okay. Is it a record that was made by the sheriff's department?

[DEFENSE ATTORNEY]: Objection, unless he has personal knowledge of the creation.

STATE v. WISE

[178 N.C. App. 154 (2006)]

[THE COURT]: Objection overruled.

[PROSECUTOR]: As the custodian, was this a record that was made by the sheriff's department?

[DEPUTY BURGESS]: Yes, it was.

. . . .

[PROSECUTOR]: Is it kept in the normal course of business by your office?

[DEPUTY BURGESS]: Yes, it is.

[PROSECUTOR]: Is it regular practice of the sheriff's department, in fact, to establish a sex offender worksheet when a person initially comes and registers?

[DEPUTY BURGESS]: Yes, sir. Every time.

Based on Deputy Burgess' testimony, the trial court admitted both documents into evidence.

Defendant contends that, because some police reports are specifically excluded from the hearsay exception of Rule 803(8), which addresses the admissibility of public records and reports, the documents at issue necessarily were excluded from admission under Rule 803(6) as records of regularly conducted activity. However, we are not persuaded that the inadmissibility of evidence under one hearsay exception necessarily precludes admission under another exception. Further, the language of Rule 803(8) plainly indicates that the legislature is fully capable of excluding certain police reports from a hearsay exception if it so desires. The legislature chose not to limit the applicability of Rule 803(6) to police records and reports which qualify as records of regularly conducted activity. Therefore, there is no merit in defendant's argument that Rule 803(6) is limited by Rule 803(8).

Moreover, we conclude that Deputy Burgess' testimony sufficed to show that the "Notice of Pending Registration" and the "Sex Offender Registration Worksheet" were records of regularly conducted activity admissible under 803(6), and the trial court properly allowed them into evidence.

This assignment of error is overruled.

**STATE v. WISE**

[178 N.C. App. 154 (2006)]

## II.

[2] In his second argument on appeal, defendant contends that he is entitled to a new trial because the trial court departed from its neutral role as a judicial officer by assisting the prosecution in its understanding of the elements of the offense charged and the type of evidence needed to prove its case. This contention lacks merit.

" 'The law imposes on the trial judge the duty of absolute impartiality.' " *State v. Fleming*, 350 N.C. 109, 125-26, 512 S.E.2d 720, 732 (1999) (citation omitted). However,

"[n]ot every ill-advised expression by the trial judge is of such harmful effect as to require a reversal. The objectionable language must be viewed in light of all the facts and circumstances, 'and unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless.' "

*State v. Blue*, 17 N.C. App. 526, 529, 195 S.E.2d 104, 106 (1973) (citations omitted). Indeed, our Supreme Court has declined to hold that the following conduct by a trial judge was prejudicial to a defendant:

[T]he judge informed the prosecutor that certain statements would be inadmissible; so the prosecutor rephrased his questions to restrict the witness' response . . . . During a bench conference, the judge explained to the prosecutor that luminal only reacts to the heme in hemoglobin, not to animal fat. On three occasions the judge intervened *ex mero motu* to correct improper questions, once to explain in a bench conference why the question was improper and twice to rephrase a question. Several times the judge explained why he sustained or overruled defense counsel's objections. On two occasions the prosecutor had to rephrase his questions—the latter instance was based on hearsay which the judge subsequently ruled was not hearsay, explaining why it was not to defense counsel in a bench conference. At another point the judge sustained defendant's objection and during the ensuing bench conference suggested how the question could be rephrased. On another occasion after two objections by defense counsel, the judge rephrased the question for the prosecutor.

*Fleming*, 350 N.C. at 127, 512 S.E.2d at 733.

In the instant case, the prosecution initially failed to produce evidence of defendant's release date from prison. During a discussion

with the trial court, the prosecutor contended that he did not have to produce evidence of a release date because the applicability of the statute was an issue of law to be decided by the court rather than an issue of fact to be decided by the jury. The following colloquy then ensued:

THE COURT: . . . [T]he statute clearly says Sections 1 and 2 of this act became effective January 1, 1996, and are applicable to all persons convicted on or after that date and to all persons released from a penal institution on or after that date period.

After hearing this discussion and thinking about this thing, in the context of this case, where a person is released—strike that— where a person is convicted prior to the effective date of this statute, I think that this statute creates an additional requirement that the State must be able to prove in order to get along in this case; and so are you asking now that the State be permitted to reopen its case in chief and to—do you have the evidence of when the—

[PROSECUTOR]: Yes, sir, I have that evidence.

THE COURT: In my discretion, I will allow it. I will allow it. I mean, I plan on not committing any injustice to be done in that. The defendant objects to that?

[DEFENSE ATTORNEY]: Absolutely, Your Honor.

Thereafter, the prosecution presented evidence that defendant had a release date of 2 June 1998.

Defendant claims that the judge acted as the prosecutor by allowing the prosecution to reopen the case and suggesting to the prosecution that it needed to make a motion to reopen the case. Furthermore, defendant claims that had the judge not appraised the prosecutor of the law, the State's case against defendant would have failed, and therefore the judge's interference was prejudicial. In making these assertions, defendant relies upon *State v. Steele*, 23 N.C. App. 524, 209 S.E.2d 372 (1974). In *Steele*, the judge interjected over 100 times with questions and comments, which cumulatively had the effect of prejudicing the jury. *Id.* at 525, 209 S.E.2d at 373.

The instant case is clearly distinguishable from *Steele*, because in the present case the judge merely settled a legal dispute outside of the presence of the jury. Further, given the facts and circumstances of

the present case, we hold that the judge did not depart from his neutral role as a judicial officer by discussing the law with the attorneys or by permitting the State to reopen its case.

This assignment of error is overruled.

## III.

[3] In his third argument on appeal, defendant asserts that the trial court erred by allowing the State to reopen its case and present additional evidence (of defendant's release date) after the parties had rested but before the case was presented to the jury. Pursuant to section 15A-1226 of the General Statutes, "[t]he judge in his discretion may permit any party to introduce additional evidence at any time prior to verdict." N.C. Gen. Stat. §15A-1226(b) (2005). A judge's decision in this regard will be reversed only upon a showing of an abuse of discretion. *State v. Riggins*, 321 N.C. 107, 109, 361 S.E.2d 558, 559 (1987). We discern no such abuse of discretion in the instant case.

This assignment of error is overruled.

## IV.

[4] In his fourth argument on appeal, defendant contends that the trial court erred by denying his motion to dismiss the charge of failing to register as a sex offender. This contention lacks merit.

A trial court should deny a motion to dismiss if, considering the evidence in the light most favorable to the State and giving the State the benefit of every reasonable inference, "there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "[T]he rule for determining the sufficiency of evidence is the same whether the evidence is completely circumstantial, completely direct, or both." *State v. Wright*, 302 N.C. 122, 126, 273 S.E.2d 699, 703 (1981).

"If a person required to register [as a sex offender] changes address, the person shall provide written notice of the new address not later than the tenth day after the change to the sheriff of the county with whom the person had last registered." N.C. Gen. Stat. § 14-208.9(a) (2005). Failing to notify the last registering sheriff of a change of address is a Class F felony. N.C. Gen. Stat. § 14-208.11(a)(2) (2005).

Defendant insists that there was no evidence that he failed to change his registered address within ten days of moving. More specifically, defendant notes that his confession supplied the only evidence of a change of address, and the confession provided no time frame for when he moved from his registered address at St. John's Church Road. However, we conclude that the language of defendant's confession, taken in the light most favorable to the State, was sufficient to permit the jury to infer that defendant had not lived at the registered address within ten days of his arrest.

The evidence before the jury tended to show that, in June of 2003, defendant informed the Cabarrus County Sheriff's Office that his address was 1000 Saint John's Church Road. Authorities did not attempt to locate defendant at that address until over a year later, in July of 2004. In his confession defendant stated, "I . . . didn't stay with my father at 1000 Saint John's Church Road . . . because when [I] went to live there, Margie Isenhower was living with my father." From this language, the jury could infer that the father's girlfriend was living at the St. John's Church Road address at the time defendant moved there. Further, a reasonable juror could infer that defendant's problems with his father's girlfriend began soon after he began living at this address, and caused defendant to move out soon thereafter. We note also that defendant's statement permits an inference that he did not actually stay at the St. John's Church Road address inasmuch as he used the language "when [I] *went* to live there . . ." as opposed to "when I *lived* there." (Emphasis added.)

Defendant also indicated that he moved to another address in a different county before moving to the 176 Cabarrus Avenue address, where he was living when the deputy tried to locate him. In his confession, defendant used the language, "*Lately*, I have been living . . . at 176 Cabarrus Avenue . . . ." (Emphasis added.) Especially given that defendant had two previous addresses within that same time period, his use of the term "lately" permits an inference that he had not lived at the St. John's Church Road for a period in excess of ten days.

Defendant also argues that the trial court should have dismissed the sex offender registration charge because there was no evidence that he was released from prison on or after 1 January 1996, which, according to defendant, is required to sustain a conviction for this offense. However, as indicated in section I of this opinion, the State did present evidence that, on 2 June 1998, defendant was released from the prison sentence imposed for taking indecent liberties with a child.

Therefore, the State's evidence was sufficient for the case to go to the jury. The trial court did not err by denying defendant's motions to dismiss. This assignment of error is overruled.

No error.

Judges CALABRIA and STEELMAN concur.