STATE OF NORTH CAROLINA v. JOSHUA PAUL RYDER, Defendant

No. COA08-489

(Filed 7 April 2009)

## 1. Constitutional Law— right to fair trial—trial court remarks—questioning prosecutor regarding whether witness had made in-court identification of defendant

The trial court did not violate defendant's right to a fair trial in a robbery with a dangerous weapon, second-degree kidnapping, and assault with a deadly weapon inflicting serious injury case by asking the prosecutor whether a witness had made an in-court identification of defendant because: (1) the remarks were not made in front of the jury; (2) given the facts and circumstances, it cannot be said that the trial court's question to the prosecutor crossed the line so as to deprive defendant of his right to an impartial jury when the trial court also has the duty to supervise and control a defendant's trial including the direct and cross-examination of witnesses to ensure fair and impartial justice for both parties; (3) a trial court has the duty to question a witness in order to clarify testimony or to elicit overlooked pertinent facts; (4) the trial court was not required to assume that the State would fail to recognize its error and remain silent so that defendant would be advantaged by the State's mistake; (5) the trial court could reasonably have anticipated that the State would realize its error and then attempt to recall its witness, thus avoiding the inconvenience to the witness and the waste of judicial resources; and (6) the limited inquiry did not suggest a lack of impartiality warranting a new trial.

## 2. Evidence— prior crimes or bad acts—testimony—unrelated criminal charges—plain error analysis

The trial court did not commit plain error in a robbery with a dangerous weapon, second-degree kidnapping, and assault with a deadly weapon inflicting serious injury case by allowing a detective to testify about unrelated criminal charges that were pending

against defendant because: (1) defendant failed to make a showing that absent this testimony, the jury would have reached a different verdict; (2) defendant made no argument regarding the impact of the testimony in light of the significant amount of evidence presented by the State tending to identify defendant as the perpetrator; and (3) it cannot be concluded that the brief mention of other unspecified charges tipped the scales in favor of defendant's conviction.

3. **Kidnapping; Robbery— failure to instruct on lesser-included offenses—false imprisonment—common law robbery**

   The trial court erred by refusing to instruct the jury on false imprisonment as a lesser-included offense of second-degree kidnapping and common law robbery as a lesser-included offense of armed robbery because a reasonable jury could have found that: (1) defendant formed the intent to rob the victim of her car only when she got out of the car after he removed the car keys from the ignition; (2) defendant formed the intent to rob the victim only after the restraint was over and thus defendant had not restrained the victim for the purpose of robbing her; and (3) the victim was induced to relinquish her car to defendant by the threat of being hit with defendant's fist rather than the use or threatened use of a gun, a fist is not considered a dangerous weapon for the purposes of armed robbery, and the State cannot argue on appeal inconsistently with the indictment that the car itself rather than the gun was the dangerous weapon.

4. **Assault— deadly weapon inflicting serious injury—sufficiency of evidence**

   The trial court did not err by denying defendant's motion to dismiss the charge of assault with a deadly weapon inflicting serious injury based on alleged insufficient evidence of an assault, even though defendant contends the victim caused her own injury by holding onto the car as defendant was driving off, because a jury could infer from the victim's testimony that she was trying to escape from the car and defendant, but got caught between the door and the car frame when defendant backed up, thus causing her to stumble, and thereafter she was holding onto the car door to steady herself as defendant drove off with the car door still open dragging the victim along.

**5. Appeal and Error—writ of certiorari denied—new trial ordered and potential new sentences**

The Court of Appeals, in its discretion, chose not to grant defendant's petition for certiorari to review only the assault with a deadly weapon inflicting serious injury sentence because it ordered a new trial and potentially new sentences on the second-degree kidnapping and robbery with a dangerous weapon charges.

Appeal by defendant from judgments entered 7 November 2007 by Judge J. Gentry Caudill in Mecklenburg County Superior Court. Heard in the Court of Appeals 22 October 2008.

*Attorney General Roy Cooper, by Assistant Attorney General John P. Barkley, for the State.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by John Keating Wiles, for defendant-appellant.*

GEER, Judge.

Defendant Joshua Paul Ryder appeals his convictions for robbery with a dangerous weapon, second degree kidnapping, and assault with a deadly weapon inflicting serious injury ("AWDWISI"). On appeal, defendant primarily contends that the trial court erred in failing to instruct the jury on the lesser included offenses of false imprisonment and common law robbery. Based upon our review of the record, we conclude that, viewing the evidence in the light most favorable to defendant, a jury could reasonably find that defendant committed the crime of false imprisonment rather than second degree kidnapping and that he committed common law robbery rather than robbery with a dangerous weapon. Accordingly, we hold that defendant is entitled to a new trial on the charges of second degree kidnapping and robbery with a dangerous weapon. We find defendants' arguments regarding his AWDWISI conviction unpersuasive and, therefore, uphold that conviction.

Facts

The State's evidence tended to show the following facts. On 3 May 2006, at 11:00 a.m., while leaving Carolina Place Mall in Charlotte, North Carolina, Saundra Graunke was approached by a man in the parking lot. The man, ultimately identified as defendant, told her that he was from New York, had been dropped off, and

needed a ride to Wal-Mart. When Ms. Graunke told defendant she could not take him to Wal-Mart, he asked if she could instead take him to the next gas station. Ms. Graunke inspected defendant's driver's license and agreed to give him a ride.

After they left the mall in Ms. Graunke's black 1999 Ford Escort, defendant told her "that he had drugs in his bag, and that he had a gun." Ms. Graunke asked if she could still drop him off as agreed, but the man told her she was "a stupid bitch for giving him a ride," and he was going to teach her a lesson. He grabbed her crotch and said that he could rape her, but that he was not going to do so.

Defendant had Ms. Graunke turn right on South Boulevard and then into a neighborhood, telling her as they drove that he needed to get rid of his drugs. He then had her return to South Boulevard and take a left onto Westinghouse Boulevard. When he directed her onto a street with a dead-end sign, Ms. Graunke became afraid that she was too far from the main road, and no one could see her to help. She refused to turn onto the road and instead tried to turn the car around, but defendant held the steering wheel and pulled the parking brake. Defendant then took the keys out of the ignition. When Ms. Graunke asked him to give them back, he raised his fist as if to hit her.

Ms. Graunke opened the car door, hoping that other drivers would see the struggle and come to her aid. She got out of the car, and defendant "scotched over to the driver's side." Ms. Graunke asked him not to take the car, but he backed up, causing her to stumble when she was caught between the car and the door. She grabbed hold of the door, but, then, as he drove forward, she fell and was dragged by the car. Ms. Graunke's finger either got stuck in the door or broke when she fell.

As defendant drove off in the car, Ms. Graunke began screaming, and someone stopped and called an ambulance and the police. Ms. Graunke was taken to the hospital, where she gave a statement to the police and was treated for her injuries, including scrapes on her back and knee, a bruised wrist, and a broken finger that required surgery.

The next day, 4 May 2006, Pamela Galati noticed a black 1999 Ford Escort in the driveway of her neighbor Jeff Kaderli's house. Ms. Galati thought this was unusual because she knew that Mr. Kaderli did not own a car, so she wrote down the car's license plate number. After she saw a news report about a stolen black 1999 Ford Escort with the same license plate number as the car in Mr. Kaderli's drive-

way, she called 911. She then observed Mr. Kaderli and a man she subsequently identified as defendant leave in the car. When they returned, she called the police, who arrived about 10 minutes later and took defendant and Mr. Kaderli into custody.

When the two men arrived at the police station, Detective Chris Perez called Ms. Graunke and asked her to come down to the station for a "show up." After Detective Perez interviewed Ms. Graunke, he showed Mr. Kaderli and defendant to her, and she identified defendant as the perpetrator. A subsequent forensic investigation of Ms. Graunke's car uncovered latent fingerprints that matched defendant's fingerprints and a cigarette butt with a DNA profile that matched defendant's DNA profile.

Defendant was indicted for robbery with a dangerous weapon, AWDWISI, attempted rape, and first degree kidnapping. At trial, defendant presented no evidence, but moved to dismiss all of the charges against him. The trial court dismissed the charges of attempted rape and first degree kidnapping, but submitted charges of sexual battery, second degree kidnapping, robbery with a dangerous weapon, and AWDWISI to the jury. Over defendant's objection, the court refused to instruct the jury on the lesser included offenses of false imprisonment, common law robbery, and larceny of a motor vehicle.

The jury found defendant not guilty of the charge of sexual battery, but guilty of the remaining charges. The trial court imposed a presumptive-range sentence of 116 to 149 months imprisonment for the robbery conviction, a consecutive presumptive-range sentence of 45 to 63 months imprisonment for the second degree kidnapping conviction, followed by a third consecutive presumptive-range sentence of 45 to 63 months imprisonment for the AWDWISI conviction. Defendant timely appealed to this Court.

I

[1] Defendant first contends that certain remarks made by the trial judge deprived him of his right to a fair trial and an unprejudiced jury. During the State's direct examination of Ms. Graunke, the prosecutor did not ask her to make an in-court identification of defendant. Defense counsel then proceeded with the cross-examination of Ms. Graunke. The court recessed and the following morning, when court was back in session, but before the jury had been brought in, the following exchange took place:

THE COURT: And the other question I have, was there an identification of the defendant from Ms. Graunke during the testimony?

[PROSECUTOR]: Not yesterday, sir.

THE COURT: All right. I just wanted to make sure I was clear on that.

On re-direct examination by the State, Ms. Graunke identified defendant as the man who had committed the offenses against her.

Defendant argues that the trial court's remarks, by prompting the prosecutor to elicit an important piece of evidence, violated his right to a fair trial under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the North Carolina Constitution. "Every person charged with a crime has an absolute right to a fair trial. By this it is meant that he is entitled to a trial before an impartial judge and an unprejudiced jury in keeping with substantive and procedural due process requirements of the Fourteenth Amendment." *State v. Britt*, 288 N.C. 699, 710, 220 S.E.2d 283, 290 (1975). In this case, the remarks were not made in front of the jury and, therefore, this appeal does not present any question of the trial court's prejudicing the jury by expressing an opinion in its presence.

Not every action or remark by a trial court that could be viewed as assisting the State in its prosecution of a defendant violates the defendant's right to an impartial trial. In *State v. Wise*, 178 N.C. App. 154, 161-62, 630 S.E.2d 732, 736-37 (2006), the State had rested without presenting evidence on an issue that the trial court believed was an element of the charge. The trial court called the omission to the attention of the prosecutor, countered the prosecutor's contention that the issue was a question of law, and allowed the State to reopen its case to present the necessary evidence. *Id.* The defendant contended that he was denied a fair trial because "the judge acted as the prosecutor by allowing the prosecution to reopen the case and suggesting to the prosecution that it needed to make a motion to reopen the case." *Id.* at 162, 630 S.E.2d at 737. The Court rejected this argument, holding that "given the facts and circumstances of the present case . . . the judge did not depart from his neutral role as a judicial officer by discussing the law with the attorneys or by permitting the State to reopen its case." *Id.* at 162-63, 630 S.E.2d at 737.

We think the same is true in this case. Given the facts and circumstances, we cannot say that the trial judge's question to the prosecutor regarding whether the witness had made an in-court identification of defendant crossed the line so as to deprive defendant of his right to an impartial judge. As our Supreme Court has emphasized in addressing a similar argument, "[t]he trial judge also has the duty to supervise and control a defendant's trial, including the direct and cross-examination of witnesses; to ensure fair and impartial justice for both parties." *State v. Fleming*, 350 N.C. 109, 126, 512 S.E.2d 720, 732 (holding that trial judge was impartial despite his suggesting to counsel how to re-phrase questions, informing prosecutor that certain statements by witness would be inadmissible, explaining why he had sustained or overruled objections, and intervening to correct improper questions), *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274, 120 S. Ct. 351 (1999). The Court added: " 'Furthermore, it is well recognized that a trial judge has a duty to question a witness in order to clarify his testimony or to elicit overlooked pertinent facts.' " *Id.* (quoting *State v. Rogers*, 316 N.C. 203, 220, 341 S.E.2d 713, 723 (1986), *overruled in part on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177, 118 S. Ct. 248 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988)).

In this case, the trial court was not required to assume that the State would fail to recognize its error and remain silent so that defendant would be advantaged by the State's mistake. Indeed, the trial court could reasonably have anticipated that the State would realize its error in failing to ask for an identification and then attempt to recall its witness. By raising the issue while Ms. Graunke was still on the stand, the trial court avoided the inconvenience to Ms. Graunke and the waste of judicial resources of having the State later seek to recall Ms. Graunke or even reopen its case. The limited inquiry by the trial court in this case does not suggest a lack of impartiality warranting a new trial. We, therefore, overrule this assignment of error.

II

[2] Defendant next contends the trial court erred in allowing Detective Perez to testify about unrelated criminal charges that were pending against defendant. Because he failed to object to this testimony at trial, defendant asks us to review the issue for plain error. "Under the plain error standard of review, defendant has the burden of showing: '(i) that a different result probably would have been

reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial.' " *State v. Jones*, 358 N.C. 330, 346, 595 S.E.2d 124, 135 (quoting *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997)), *cert. denied*, 543 U.S. 1023, 160 L. Ed. 2d 500, 125 S. Ct. 659 (2004).

Detective Perez testified that when officers arrived at Mr. Kaderli's house, "they encountered two individuals. And one would have been under arrest in any event for unrelated charges, and there was another one that was willing to come to the police department voluntarily to talk to us about that vehicle . . . ." Subsequently, Detective Perez testified that when he conducted the show up, he started with Mr. Kaderli because "Mr. Kaderli was there on a voluntary basis." Defendant contends that this testimony, taken as a whole, "tended to show that Mr. Ryder was charged with some other, unrelated crimes" in violation of Rule 404(b) of the North Carolina Rules of Evidence.

Defendant has not, however, made any showing that in the absence of this testimony, the jury would have reached a different verdict. The State presented evidence that Ms. Graunke identified defendant as her attacker, that Ms. Graunke's car was found to contain defendant's fingerprints and DNA, and that an eyewitness saw defendant with Ms. Graunke's car the day after her car was stolen. Defendant makes no argument regarding the impact of Detective Perez' testimony in light of the significant amount of evidence presented by the State tending to identify defendant as the perpetrator. We cannot conclude that the brief mention of other, unspecified charges pending against defendant tipped the scales in favor of defendant's conviction. *See State v. Lewis*, 68 N.C. App. 575, 580-81, 315 S.E.2d 766, 769-70 (holding that deputy sheriff's testimony that defendant "was being sought on other warrants at the time he was arrested on the instant charges" was not prejudicial given "overwhelming evidence against defendant"), *appeal dismissed and disc. review denied*, 312 N.C. 87, 321 S.E.2d 904 (1984).

III

**[3]** Defendant next contends the trial court erred in refusing to instruct the jury on the lesser included offenses of false imprisonment and common law robbery. "An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater." *State v. Millsaps*, 356 N.C. 556, 561, 572 S.E.2d

767, 771 (2002). When determining whether there is sufficient evidence for submission of a lesser included offense to the jury, we view the evidence in the light most favorable to the defendant. *State v. Barlowe*, 337 N.C. 371, 378, 446 S.E.2d 352, 357 (1994).

Defendant first argues the trial court was required to instruct the jury on the charge of false imprisonment as a lesser included offense of second degree kidnapping. "The crime of false imprisonment is a lesser included offense of kidnapping." *State v. Whitaker*, 316 N.C. 515, 520, 342 S.E.2d 514, 518 (1986). "The difference between kidnapping and the lesser-included offense of false imprisonment is the purpose of the confinement, restraint, or removal of another person. If the purpose of the restraint was to accomplish one of the purposes enumerated in N.C. Gen. Stat. § 14-39, then the offense is kidnapping. However, if the unlawful restraint occurs without any of the purposes specified in the statute, the offense is false imprisonment." *State v. Claypoole*, 118 N.C. App. 714, 717-18, 457 S.E.2d 322, 324 (1995).

The trial court instructed the jury that in order to convict defendant of kidnapping, it had to find that defendant kidnapped Ms. Graunke for the purpose of facilitating the robbery. Defendant contends that it is possible that a jury could reasonably find, based on the evidence viewed in the light most favorable to defendant, that defendant did not possess the intent to rob Ms. Graunke when he kidnapped her. Viewing Ms. Graunke's account of what occurred in the light most favorable to defendant, we agree that a reasonable jury could have found that defendant formed the intent to rob Ms. Graunke of her car only when she got out of the car after he removed the car keys from the ignition. Based on Ms. Graunke's testimony, a reasonable jury could have found that defendant formed the intent to rob Ms. Graunke only after the restraint was over and thus that defendant had not restrained Ms. Graunke for the purpose of robbing her. Therefore, we hold that the trial court was required to instruct the jury on the lesser included offense of false imprisonment, and defendant is entitled to a new trial on the second degree kidnapping charge.

Defendant also contends the trial court was required to instruct the jury on common law robbery as a lesser included offense of N.C. Gen. Stat. § 14-87 (2007), robbery with a dangerous weapon. "The essential elements of robbery with a dangerous weapon are: '(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person

is endangered or threatened.' " *State v. Haselden*, 357 N.C. 1, 17, 577 S.E.2d 594, 605 (quoting *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998)), *cert. denied*, 540 U.S. 988, 157 L. Ed. 2d 382, 124 S. Ct. 475 (2003). On the other hand, "[r]obbery at common law is the felonious taking of money or goods of any value from the person of another or in his presence against his will, by violence or putting him in fear." *State v. McNeely*, 244 N.C. 737, 741, 94 S.E.2d 853, 856 (1956). The difference between the two crimes is the use of a dangerous weapon in the commission of the robbery. *State v. Lyles*, 9 N.C. App. 448, 449-50, 176 S.E.2d 254, 255-56 (1970).

Defendant contends that viewing the evidence in the light most favorable to him, a reasonable jury could have found that defendant robbed Ms. Graunke of her car without the use of a dangerous weapon. The evidence indicated that shortly after defendant entered Ms. Graunke's car, he mentioned that he had a gun. Ms. Graunke did not, however, testify that he ever mentioned it again during the incident, including when he took the car from Ms. Graunke. Ms. Graunke testified that she never saw a gun on defendant's person or in the bag he was carrying. Additionally, Ms. Graunke testified that she decided to get out of the car when defendant "raised his fist" as if to hit her when she asked him to give her back the keys to her car.

This testimony would allow a reasonable jury to conclude that Ms. Graunke was induced to relinquish her car to defendant by the threat of being hit with defendant's fist, rather than because of the use or threatened use of a gun. This Court has held that a fist is not considered a dangerous weapon for the purposes of armed robbery. *State v. Duff*, 171 N.C. App. 662, 672, 615 S.E.2d 373, 381 (holding that "an individual's bare hands, fists, and feet are not considered dangerous weapons for the purposes of N.C. Gen. Stat. § 14-87"), *disc. review denied*, 359 N.C. 854, 619 S.E.2d 853 (2005). In light of this evidence, we believe a reasonable jury could acquit defendant of robbery with a dangerous weapon, but convict defendant of common law robbery.

The State argues alternatively that the car itself, rather than the gun, was the dangerous weapon used to perpetrate the robbery. This argument is, however, inconsistent with the indictment, which alleged that defendant used "a firearm" to rob Ms. Graunke. When an indictment charges a crime that requires the use of a deadly weapon, the State is required to " '(1) name the weapon and (2) either to state expressly that the weapon used was a "deadly weapon" or to allege

such facts as would *necessarily* demonstrate the deadly character of the weapon.' " *State v. Brinson,* 337 N.C. 764, 768, 448 S.E.2d 822, 824 (1994) (quoting *State v. Palmer,* 293 N.C. 633, 639-40, 239 S.E.2d 406, 411 (1977)). The State cannot, on appeal, change the identity of the dangerous weapon from that specified in the indictment in order to support the conviction.

Consequently, we agree with defendant that the trial court erred in failing to instruct the jury on both false imprisonment and common law robbery. Defendant is, therefore, entitled to a new trial on the charges of second degree kidnapping and robbery with a dangerous weapon.

IV

[4] With respect to his AWDWISI conviction, defendant contends that the trial court erred in denying his motion to dismiss. When we review a trial court's denial of a motion to dismiss, "the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell,* 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "If so, the motion is properly denied." *Id.* Substantial evidence is that amount of evidence "sufficient to persuade a rational juror to accept a particular conclusion." *State v. Goblet,* 173 N.C. App. 112, 118, 618 S.E.2d 257, 262 (2005). We view the evidence in the light most favorable to the State. *Id.*

N.C. Gen. Stat. § 14-32(b) (2007) provides that "[a]ny person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as a Class E felon." "The elements of a charge under G.S. § 14-32(b) are (1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." *State v. Aytche,* 98 N.C. App. 358, 366, 391 S.E.2d 43, 47 (1990).

Defendant contends that the State failed to present sufficient evidence of an assault. To establish the element of assault, the State must present evidence "of an overt act showing an intentional offer by force and violence to do injury to another sufficient to put a person of reasonable firmness in apprehension of immediate bodily harm." *State v. Musselwhite,* 59 N.C. App. 477, 481, 297 S.E.2d 181, 184 (1982). Defendant contends that no assault occurred because the victim caused her own injury by holding on to the car as he was driving off.

Ms. Graunke testified that when defendant grabbed the keys to her car and raised his fist, she "thought this would be a good time to get out of the car because this is definitely not going well." She opened the car door in hopes that people in cars driving by might realize something was wrong and try to help her. She then explained what happened next:

[H]e scotched over to the driver's side.

And I was standing in the car door and he backed up. And I asked him not to take my car. He backed up and I stumbled back. And then he drove forward and I had held on to the car. I was between the car and the door. And I held on to it and then he drove forward and I got dragged a little. I think my finger either got stuck in the door or it broke when I fell. And then I just got dragged a little.

And then he drove off; and I saw him driving off closing the door.

A jury could infer from this testimony that Ms. Graunke was trying to escape from the car and defendant, but got caught between the door and the car frame when defendant backed up, causing her to stumble. Then, as she was holding on to the car door to steady herself, he drove off with the car door still open, dragging her along. We believe that this evidence is sufficient to support a finding of an assault and, therefore, the trial court properly denied defendant's motion to dismiss the AWDWISI charge.

V

[5] Finally, we address defendant's petition for writ of certiorari, in which he argues that the trial court erred in failing to impose a mitigated-range sentence and by imposing consecutive sentences. Because defendant was sentenced within the presumptive range, he had no right to appeal his sentence. *State v. Brown*, 146 N.C. App. 590, 593, 553 S.E.2d 428, 430 (2001), *appeal dismissed and disc. review denied*, 356 N.C. 306, 570 S.E.2d 734 (2002); N.C. Gen. Stat. § 15A-1444(a1) (2007). N.C. Gen. Stat. § 15A-1444(a1), however, provides that a defendant "may petition the appellate division for review of this issue by writ of certiorari."

In mitigation, defendant presented evidence that he suffered from substance abuse and anxiety and had been treated for bipolar disorder on multiple occasions. Defendant's evidence indicated that he

had been unable to get his prescriptions renewed and was in the middle of a manic episode when the incident took place. Defendant asked the trial court to consolidate the three convictions for sentencing and impose a mitigated-range sentence, but the trial court did neither.

We have, however, ordered a new trial on the charges of armed robbery and second degree kidnapping. As there will be a new trial and potentially new sentences on two of the charges against defendant, we choose, in our discretion, not to grant defendant's petition for certiorari to review only the AWDWISI sentence.

New trial in part; no error in part.

Judges ROBERT C. HUNTER and ELMORE concur.